858 F.2d 115
 57 USLW 2235
 UNITED STATES of America, Appellee,
v.
James Sutton REGAN, Jack Z. Rabinowitz, Charles M. Zarzecki,
Paul Berkman, Steven Barry Smotrich, and Bruce Lee
Newberg, Defendants,
Princeton/Newport Partners, L.P., Oakley Sutton Management
Corporation, Oakley Sutton Investment Corporation, Englewood
Partners, Englewood Partners d/b/a Princeton/Newport
Arbitrage Partners, Spring Street Partners of N.J., L.P.,
Oakley Sutton Enterprises, Inc., Boss Partners, Oakley
Sutton Partners, L.P., Oakley Sutton Securities Corp., OSM
Partners, L.P., PNP Ltd., Princeton/Newport Income Partners,
Princeton/Newport Index Partners, Princeton/Newport Option
Partners, Roulette N.V., Swilaz Partners, Westcoast
Investments, Witherspoon Associates of N.J., L.P.,
Princeton/Newport Collateral Partners, and all other
entities owned or controlled by Princeton/Newport, Appellants.
 No. 1684, Docket 88-1344.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 17, 1988.
Decided Sept. 22, 1988.
 
 Robert M. Abrahams, New York City (Linda J. Cahn, Schulte Roth & Zabel, New York City, of counsel), for appellant Princeton/Newport Partners, L.P.
 Bruce A. Baird, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Neil S. Cartusciello, Kerri L. Martin, Asst. U.S. Attys., New York City, Peter G.A. Safirstein, Sp. Asst. U.S. Atty., New York City, of counsel), for appellee.
 William W. Taylor, III, Washington, D.C. (Michael R. Smith, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., Robert Kasanof, New York City, of counsel), for all appellants.
 Before WINTER and MINER, Circuit Judges, and BILLINGS, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 This appeal raises questions concerning the propriety of restraints upon property in the hands of third parties that is potentially forfeitable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1961 et seq. (Supp. IV 1986).
 
 
 2
 Appellants are a consortium of twenty investment companies owned or controlled by Princeton/Newport Partners, L.P. (collectively "the Princeton/Newport Group" or "the Group"). The Princeton/Newport Group is not a defendant in the RICO action. Five of the six defendants, however, are partners in, and/or executives of, Princeton/Newport Partners, L.P. and/or the Group, and these defendants are alleged to have conducted these firms in a manner that violated RICO. Because the defendants' interests in the Princeton/Newport Group are forfeitable upon conviction, the Princeton/Newport Group is a third party in possession of potentially forfeitable property. The Group appeals from Judge Stanton's order prohibiting them from engaging in transactions outside the ordinary course of business without prior authorization and subjecting their affairs to review by a government-designated monitor.
 
 
 3
 We reject appellants' claim that their assets are beyond the authority of a court under Section 1963(d)(1)(A) to restrain the dissipation of potentially forfeitable assets. We also reject appellants' claim that the restraining order in question is overbroad because it affects the use of assets that are not subject to forfeiture. Our sole reservation arises out of the lack of a finding as to the need to restrain the Princeton/Newport Group's property as well as the property of the individual defendants. We remand for such a finding.
 
 BACKGROUND
 
 4
 On August 4, 1988, a grand jury in the Southern District of New York returned an indictment charging James Sutton Regan, Jack Z. Rabinowitz, Charles M. Zarzecki, Paul Berkman, Steven B. Smotrich and Bruce Lee Newberg with: (i) conspiring to commit securities fraud, mail fraud, wire fraud, tax fraud, and to create and maintain false books and records in violation of the securities laws; (ii) conspiring to conduct and participate in the affairs of a racketeering enterprise consisting of the Princeton/Newport Group; (iii) conducting and participating in that racketeering enterprise; and (iv) committing mail and wire fraud. The indictment seeks forfeiture of the proceeds received by the defendants from the unlawful acts and of the defendants' interests in the alleged racketeering enterprise, the Princeton/Newport Group, claimed by the government to have been 12 percent at the time of the crimes.
 
 
 5
 The Princeton/Newport Group consists of Princeton/Newport Partners, L.P., a limited partnership, and nineteen associated business ventures, each of which are owned and/or controlled by Princeton/Newport Partners, L.P. The Group is engaged in anomaly arbitrage--the buying and selling of securities based on mathematical models that identify market anomalies.
 
 
 6
 The defendants are alleged to have used the Princeton/Newport Group to engage in bogus transactions that created fictitious losses in violation of the tax laws and "parked" stock--concealed its ownership--for Drexel Burnham Lambert, Inc. in violation of securities disclosure rules. Five of the defendants either hold an equity position in, or are employees of, an entity included in the Princeton/Newport Group. Regan is one of two managing general partners of Princeton/Newport Partners, L.P. Rabinowitz is a general partner of Princeton/Newport Partners, L.P., responsible for overseeing and managing the financial and accounting operations of the Group. Zarzecki is a general partner of Princeton/Newport Partners, L.P. and directs the Princeton/Newport Group's trading activity. Berkman is a general partner of and principal trader for Princeton/Newport Arbitrage Partners, a Princeton/Newport Group entity, while Smotrich is comptroller of the Princeton/Newport Group. Bruce Lee Newberg, the remaining defendant, was an employee of Drexel Burnham Lambert, Inc.
 
 
 7
 On the day that the grand jury returned the indictment, the government moved, pursuant to 18 U.S.C. Sec. 1963(d)(1)(A), for an order freezing real property and various financial accounts other than interests in the Princeton/Newport Group owned by the individual defendants. It further moved to restrain the defendants from withdrawing their partnership interests in the Group. Such orders have been entered and are not at issue on this appeal.
 
 
 8
 The government also moved for an order directed at the Princeton/Newport Group restraining the use of its assets. After two hearings, the district court entered an order that: (i) prohibits the Princeton/Newport Group from disposing of any of its assets, "[e]xcept in the ordinary course of business[,]" unless it receives express permission from the district court after providing the government with three hours prior notice; (ii) directs the Princeton/Newport Group to allow a government-designated "monitor" to conduct a review, at least twice monthly and at the Group's expense, of the Group's books and records; and (iii) guarantees that "[e]ntities doing business with Controlled Entities or defendants will not be deemed in violation of [the] Order for any transactions undertaken with the Controlled Entities or defendants, and shall be fully protected in connection with any transactions with the Controlled Entities, if they receive an oral representation to them by an employee of the entities, other than the defendants, that the transaction is allowed by this Order." In addition, the order provides that "[e]ntities doing business with the Controlled Entities shall be entitled to presume the authenticity of representations and instructions from any person who is identified as an employee of the Controlled Entities."
 
 
 9
 In order to allow Princeton/Newport to take this appeal, the district court stayed distribution of the restraining order to various institutions with which the individual defendants and the Princeton/Newport Group have accounts. The author of this opinion, sitting as applications judge, declined to stay the order and authorized the distribution of one paragraph of the order, affecting only the individual defendants, to institutions where those defendants had personal accounts.[1] The prohibition on distribution of the entire order to institutions doing business with the Group was allowed to continue.
 
 DISCUSSION
 
 10
 Three questions are before us on appeal: (i) what property is potentially forfeitable; (ii) may an order entered under Section 1963(d)(1)(A) be directed to unindicted third parties; and (iii) if so, was the order entered in this case appropriate.
 
 
 11
 With regard to what property is forfeitable, Section 1963(d)(1)(A) provides:
 
 
 12
 Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section--
 
 
 13
 (A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section[.]
 
 
 14
 Under the terms of Section 1963(d)(1)(A), therefore, the property sought to be preserved by a restraining order must be potentially forfeitable under Section 1963(a). That Section provides in pertinent part:
 
 
 15
 Whoever violates any provision of section 1962 of this chapter ... shall forfeit to the United States, irrespective of any provision of State law--
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 (2) any--
 
 
 19
 (A) interest in;
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (D) property or contractual right of any kind affording a source of influence over;
 
 
 23
 any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity ... in violation of section 1962.
 
 
 24
 18 U.S.C. Sec. 1963(a) (Supp. IV 1986). Section 1963(c) provides that title to forfeitable property vests in the United States at the time of the crimes.
 
 
 25
 The potentially forfeitable property includes the "proceeds" received by the defendants from the illegal activity. The value of such proceeds in the instant case is presumably secured by that portion of the restraining order directed to the individual defendants' real property and financial accounts. As stated, that part of the order has not been appealed. The potentially forfeitable property also includes the value of the partnership interests of the individual defendants in the Princeton/Newport Group at the time of the crimes because the Group allegedly was the "enterprise which the [defendants] ha[ve] established, operated, controlled, conducted or participated in the conduct of in violation of [RICO]."[2] The individual defendants have been restrained from withdrawing those partnership interests and have not appealed. In addition, however, the restraining order prohibits, without prior approval, non-ordinary-course-of-business transactions by the Princeton/Newport Group and provides for review by a government-designated monitor. It is the restraint on the Princeton/Newport Group that appellants challenge.[3]
 
 
 26
 Turning to the second question, appellants argue that Section 1963(d)(1)(A) does not authorize an order restraining an unindicted third party. We disagree. The language of the provision in no way limits restraining orders to indicted persons where restraints on the defendants are insufficient to preserve potentially forfeitable property. On the contrary, the provision focuses on the potentially forfeitable property, not the parties to the criminal proceeding. The statute thus empowers the district court to "take any other action" it believes necessary "to preserve the availability of [that] property" in the event of the defendants' conviction. 18 U.S.C. Sec. 1963(d)(1). This language reflects the primacy of Congress's concern for the preservation of forfeitable property pending the outcome of the criminal trial.
 
 
 27
 As the Supreme Court has stated with regard to RICO, "[i]f the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' " Russello v. United States, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). The legislative history of Section 1963(d), however, offers little support for appellants. Indeed, the Senate Report stated:
 
 
 28
 This provision sets forth the authority of the courts to enter restraining orders to preserve the availability of forfeitable assets until the conclusion of trial. Like current 18 U.S.C. 1963(b), this authority allows the court to enter a restraining order, require the execution of a satisfactory performance bond, or take other action to preserve the government's ability to reach the defendant's forfeitable assets after conviction....
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 The sole purpose of the bill's restraining order provision, like that in the current RICO and [Continuing Criminal Enterprise] statutes, is to preserve the status quo, i.e., to assure the availability of the property pending disposition of the criminal case....
 
 
 32
 S.Rep. No. 225, 98th Cong., 2d Sess. 202, 204, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3385, 3387. This purpose cannot be achieved if courts graft onto the statute a wholesale bar to restraints on third parties. In this case, for example, this purpose would not be served by allowing the Princeton/Newport Group to continue to exercise unrestrained power over potentially forfeitable funds when the defendants in the RICO action occupy crucial managerial positions within the Group.
 
 
 33
 Relying on Fed.R.Civ.P. 65(d), Alemite Manufacturing Corp. v. Staff, 42 F.2d 832 (2d Cir.1930), and Heyman v. Kline, 444 F.2d 65 (2d Cir.1971), the appellants argue that common law principles preclude the imposition of restraining orders on parties not before the court. Fed.R.Civ.P. 65(d) does state that injunctions and restraining orders are "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Similarly, both Alemite and Heyman advance the proposition that a court generally may not issue an order against a nonparty.
 
 
 34
 The restraining orders authorized by Section 1963(d)(1)(A), however, differ from the typical injunction designed to affect the conduct of a party based upon a determination of that party's legal rights. In the case of the latter, the party is normally restrained from acting in a way determined to be illegal in the course of the litigation or ordered to take steps to remedy acts determined to be illegal, again in the course of the litigation. A restraining order under Section 1963(d)(1)(A), by contrast, is designed only to preserve property for forfeiture after a RICO conviction. Section 1963(d)(1)(A) orders thus resemble remedies such as garnishment or attachment that may be directed routinely at third parties, see, e.g., N.Y.Civ.Prac.L. & R. Sec. 5201 (McKinney 1978), even though those parties have no interest in the merits of the underlying litigation.
 
 
 35
 We draw support from United States v. Long, 654 F.2d 911 (3d Cir.1981), where the Third Circuit upheld an order, issued pursuant to the then closely analogous forfeiture provision of the Continuing Criminal Enterprise Statute ("CCE"), 21 U.S.C. Sec. 848(a)(2) (1976),[4] preventing the defendant's attorneys from disposing of an airplane alleged by the government to be forfeitable. The defendant had transferred the airplane to the attorneys, and the court held that effective implementation of the statute required the availability of orders directed at third parties, even though the CCE forfeiture provisions as then drafted did not expressly apply to transferees with knowledge. The court stated that without orders directed at third parties, the statute's "punitive purposes [would be] frustrated by allowing a defendant to transfer the illegal proceeds to a knowing third party." Long, 654 F.2d at 916. We believe similar reasoning applies to this case, in which the Princeton/Newport Group holds potentially forfeitable property and defendants occupy crucial managerial positions in the Group.[5]
 
 
 36
 We turn now to the question of the appropriateness of the order in the present case. Its most obvious--and very serious--vulnerability, of course, is that it applies to all of the Princeton/Newport Group's assets and not just to the partnership interests of the individual defendants. That flaw, however, is not necessarily fatal in the circumstances of this case. An order forbidding payment to the defendants of their partnership interests might well have been considered by the district court to afford the government less than full protection. Princeton/Newport is engaged in a business that offers ubiquitous opportunities to dissipate improperly the partnership interests. The district court was not required to close its eyes either to those opportunities or to the ability of the defendants, as managerial officers of the Group, to take advantage of them. Moreover, the order does not totally freeze the assets of the Princeton/Newport Group but rather limits its transactions, without prior approval, to those in the ordinary course of business and provides for monitoring. Appellants suggest that even that order will impair the Princeton/Newport Group's attractiveness to lenders or investors. We are unable to gauge the degree or even the existence of such harm, however, and therefore unwilling to conclude that such a speculative impairment outweighs the government's interest in preserving for forfeiture the assets in question. Our hesitation in this regard is greatly enhanced by the fact that impairment of the Group's ability to attract capital arises independently from the spectre of forfeiture hanging over it as a result of the indictment.
 
 
 37
 We also believe that the requirement of a monitor is not an abuse of discretion. As stated, Section 1963(d)(1)(A) authorizes the district court to take whatever action is reasonably necessary to preserve the availability of the forfeitable assets. Because the defendants' managerial positions at Princeton/Newport afford them the opportunity to dissipate the assets of that enterprise, a monitor is not an inappropriate measure to ensure compliance with the order.
 
 
 38
 Nevertheless, orders directed at third parties are strong medicine and should not be used where measures that are adequate and less burdensome on the third parties are available. Our reservation about the order in question arises from our belief that the sole government interest served by the order is the preservation of assets equivalent to the value of the defendants' partnership interests (and not the ouster of defendants from control, see note 2, supra ) for forfeiture. In those circumstances, the order must have as a cornerstone a finding that the restraint of the defendants' individual assets, other than the partnership interests in the Group, is insufficient to accomplish that purpose. The government has conceded--as it must in light of the express provisions of Section 1963(d)(1)--that a bond in an amount equivalent to the value of the partnership interests at the time of the crimes would eliminate the need for the challenged order. We believe it follows that a restraint on individual assets of similar value would also suffice. We note that Section 1963(n)(5) provides that where forfeitable property "has been commingled with other property which cannot be divided without difficulty, the court shall order the forfeiture of any other property of the defendant up to the value of any property [so commingled]." 18 U.S.C. Sec. 1963(n)(5) (Supp. IV 1986). Although this provision concerns the ultimate forfeiture, it surely suggests that restraining orders entered before forfeiture should be concerned with preserving assets equivalent in value to the potentially forfeitable property, and not necessarily the precise property. We believe, therefore, that where the nature of the defendants' forfeitable property makes the imposition of a restraining order burdensome on third parties, the district court should, as an alternative, restrain assets of the defendant equal in value to that of the unrestrained forfeitable property.
 
 
 39
 We are unsure as to the reasonable value of the forfeitable property--the defendants' interests in the Princeton/Newport Group plus their proceeds from the illegal activity--and the value of the non-partnership properties of the individual defendants that have been restrained. If the value of the restrained non-partnership property of a defendant exceeds the value of all potentially forfeitable property of that defendant, no restraint on the assets of the Princeton/Newport Group can be justified so far as that defendant's partnership interest is concerned. To the extent that the value of a defendant's restrained nonpartnership properties exceeds that of the proceeds he received, but not that of all his potentially forfeitable property, the need to restrain assets of the Princeton/Newport Group exists but it should have an opportunity to post a bond for the excess. 18 U.S.C. Sec. 1963(d)(1). Cf. United States v. Nichols, 841 F.2d 1485, 1490 (10th Cir.1988) (defendant's attorney allowed to retain tainted funds after posting bond pending appeal of forfeitability).
 
 
 40
 If, after a hearing on remand, it is determined that a bond is necessary but no bond is posted, the present order is to remain in effect. Under those circumstances, the stay on the distribution of that order is to be removed. Pending that determination, however, distribution shall continue to be stayed.[6]
 
 
 41
 The mandate shall issue forthwith. On remand, the present order may be maintained for a reasonable period of time to allow the government to show that the restraints on individual assets of the defendants other than interests in the Princeton/Newport Group are insufficient to preserve the full value of potentially forfeitable property pending trial.
 
 
 
 *
 The Hon. Franklin S. Billings, Jr., United States District Judge for the District of Vermont, sitting by designation
 
 
 [1]
 The government violated this stay by distributing the entire order. In view of our disposition of this matter, see note 6 infra, and accompanying text, we take no action regarding that act
 
 
 [2]
 Where a RICO defendant is a partner in a partnership, only his interest in that partnership, not the entire partnership, is forfeitable. See United States v. Cauble, 706 F.2d 1322, 1347 (5th Cir.1983). The government does not contend otherwise
 
 
 [3]
 The government has not sought an order under Section 1963(a)(2)(D) affecting the defendants' "contractual right[s] ... affording a source of influence over" the Princeton/Newport Group. 18 U.S.C. Sec. 1963(a)(2)(D) (Supp. IV 1986)
 
 
 [4]
 Congress has subsequently amended the Continuing Criminal Enterprise Statute, and the forfeiture clause is now found in 21 U.S.C. Sec. 853(e) (Supp. IV 1986)
 
 
 [5]
 To the extent that United States v. Ambrosio, 575 F.Supp. 546 (E.D.N.Y.1983), is inconsistent with our decision, we decline to follow it. We note, however, that the language "or take any other action" had not been inserted in subsection (d)(1)(A) at the time of that decision
 
 
 [6]
 We are uncertain as to the purpose of a stay on distribution while the order remains in effect. The indictment surely chills lenders and investors who know of it, and a stay on distribution may create an illusion of security even though such a stay has no effect on the potential for forfeiture of the Group's assets. Nevertheless, we are reluctant to lift that stay pending further proceedings lest, in the peculiar circumstances of this case, some unintended significance be given to our action