**UNITED STATES of America**

**v.**

**Angelo PACCIONE, Anthony Vulpis, John McDonald, A & A Land Development, W & W Properties, August Recycling, Inc., National Carting, Inc., Stage Carting, Inc., New York Environmental Contractors, Inc., Rosedale Carting, Inc., and Vulpis Brothers, Ltd., Defendants.**

**No. S 89 Cr. 446 (CBM).**

United States District Court, S.D. New York.

Jan. 23, 1990.

Otto G. Obermaier, U.S. Atty. by Deirdre M. Daly and Adria De Landri, Asst. U.S. Attys., S.D.N.Y., New York City, for U.S.

Newman & Schwartz by Gustave Newman, and Deborah A. Schwartz, New York City, for defendants Angelo Paccione, Nat. Carting, Inc., August Recycling Inc., A & A Land Development, New York Environmental Contractors, Inc. and Stage Carting, Inc.

Benjamin Brafman, New York City, for defendants Anthony Vulpis, Vulpis Brothers, Ltd. and Rosedale Carting, Inc.

Robert Kasanof, New York City, for defendant John McDonald.

MEMORANDUM OPINION

MOTLEY, District Judge.

The issue before the court appears to be one of first impression: who should pay, and when, for the expenses associated with the appointment of a monitor to oversee defendants' assets and business interests pending a criminal RICO trial.

On June 14, 1989 an order was issued by Judge Shirley Wohl Kram (the "Order") pursuant to 18 U.S.C. Section 1963(d), restraining the individual, partnership and corporate defendants from transferring, selling or dissipating assets that, upon conviction, would be subject to forfeiture. In response to the Government's request, Judge Kram ordered that a monitor be appointed to oversee the operations of the companies, as well as the other assets re-

strained, and that the monitor be paid out of the companies' revenues. (Order at Paragraph 10) Thereafter, two amended post-indictment restraining orders were entered adding All County Sanitation Inc. and Yankee Continental Carting Inc., which are not defendants in the indictment, as named parties against whom the restraining order was effectuated.

Pursuant to the Order, in July of 1989 the Government appointed Charles Hartwig ("Hartwig"), an accountant affiliated with Touche Ross & Co., to monitor the subject assets and properties. On September 20, 1989, the Government, by letter, opposed defendants' request to modify the restraining order with regard to the payment of the monitor arguing that, although *United States v. Regan*, 858 F.2d 115 (2nd Cir.1988) did not "directly address the issue of the monitor's compensation," it provided authority for the imposition of the obligation of payment on defendants here.

On September 27, 1989 defendants replied in a letter that this Court should assess the costs of the monitor on the Government while the presumption of innocence continues to apply to defendants and where the purpose of the monitor is the protection of the public against frustration in the collection of possibly forfeitable assets. The defendants relied on the language of the *RICO* statute, itself, and *United States v. Ianniello*, 824 F.2d 203 (2nd Cir.1987) to support the aforementioned contentions.

On October 11, 1989, this court issued an opinion and order, holding that until the Government succeeds in proving its case, the monitor's expenses and compensation will be paid by the Government.

On October 19, 1989, the Government sought reconsideration of this court's order and opinion. The Government has asserted that the novel issue presented here might provide important authority in other *RICO* cases.

Defendants opposed the Government's request for reconsideration on October 24, 1989. In their letter, defendants referred the court to *United States v. Salerno*, SSS 86 Cr. 245 (MJL), where a monitor was appointed to oversee the business of one of the defendants as part of a criminal *RICO* restraining order. The Government, in that case prior to verdict, never sought to have the monitor's fee paid by the individual defendant or the company. Defendants once more relied on *Ianniello* as the case which most closely addressed the same concerns present here.

The Government, by letter on October 26, 1989, again urged reconsideration.

On October 31, 1989 defendants replied, relying on *Salerno* and *Ianniello* as persuasive authority supporting this court's order holding that the Government should pay for the monitor until the Government succeeds in proving its case.

On November 2, 1989, the court agreed to reconsider its prior order and directed a briefing schedule on this matter.

After briefing and argument, the court affirms and expounds upon its October 11, 1989 decision.

I. Reading the *RICO* Statute's Silence With Regard To Any Pre–Conviction Payment of a Monitor

Defendants concede that 18 U.S.C. Section 1963 empowers the court to appoint a monitor; however, defendants object to that part of the Order which provides that the monitor will be paid out of the revenues generated by the defendant companies. Defendants have proposed that, initially, the Government pay Hartwig's compensation. The court agrees with defendants.

As defendants point out, the RICO statute is silent as to who should pay the compensation and expenses of monitors. The forfeiture and restraining order provisions of the *RICO* statute are found in 18 U.S.C. Section 1963. Specifically, the granting of a post-indictment, pre-trial restraint of property is covered by 18 U.S.C. Section 1963(d)(1)(A), which provides:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availabil-

ity of property ... for forfeiture ... upon the filing of an indictment....

Although the statute grants broad discretion to the court to fashion an appropriate order to restrain forfeitable property, this portion of the statute does not provide any guidance as to which party should bear the cost of the restraint in the first instance.

As stated in the previous opinion issued by this court, Congress has provided a method to reimburse the Government for the expenses associated with forfeiture, including the "maintenance and custody" of forfeitable property, if and when the Government succeeds on its underlying action.

Section 1963(f) provides, in pertinent part, that:

> [T]he proceeds of any sale or other disposition of property forfeited under this section and any moneys forfeited shall be used to pay all proper expenses for the forfeiture and the sale, including the expenses of seizure, maintenance and custody of the property pending its disposition, advertising and court costs.

Because the statute is silent with regard to the question of who is responsible for paying the costs associated with the protection of assets prior to forfeiture, this section of the statute should be read as evidence of Congressional intent that the costs should initially be borne by the Government, given its ability to recover any expenditures should a *RICO* conviction and forfeiture be obtained. Thus, the Government's concern with the costs associated with forfeiture cases is directly alleviated by the reimbursement provision of 18 U.S.C. Section 1963(f).

The conclusion that the Government should initially pay for the cost of the *RICO* monitor is logically compelled by the scheme and statutory language providing for post-verdict reimbursement out of the proceeds. Any other conclusion would violate basic principles of statutory construction. *Busic v. United States*, 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980).

The only time the Government is at risk for the cost of the monitor is the period in which the presumption of innocence continues to provide defendants protection and then, ultimately, only if defendants are acquitted or the property deemed not forfeitable.

## II. Policy Considerations Underlying Exercise of Discretion

Even if statutory construction did not provide so clearly for this result, it is not disputed that Congress has given courts discretion with respect to the appointment of monitors. This court holds that such discretion carries with it discretion as to how the monitor is to be paid. The purpose of a monitor is to ensure that in the event a forfeiture verdict is obtained, such verdict would not be a nullity because of the dissipation of the restrained assets and/or the neglect of the ongoing businesses. Ultimately then, the appointment of a monitor is designed to protect the public interest.

When the public interest is at stake, the rationale for providing that the Government pay the costs of the monitor is self evident. If only the private interests of defendants were at stake, then such facts might well lead to a decision placing the burden of payment on defendants, in the exercise of the court's discretion. Where as here, however, it is the public interest which is at stake, a proper exercise of the court's discretion would lead to a determination that it is the Government who should pay initially.

In arguing that defendants should pay for the costs associated with a monitor, the Government stresses the broad language of Section 1963 and the Second Circuit's decision in *Regan*. Although the Government concedes that the Second Circuit modified certain parts of the restraining order in *Regan*, the Government insists on reading the absence in the opinion of any direct reference as to who should pay, as authority for the proposition that defendants should pay. This sophistic approach will not work in the instant case.

The Government's reliance on *Regan* is misplaced. As the court noted in its earlier opinion, *United States v. Paccione*, S 89

Cr. 446, 1989 WL 122893 (S.D.N.Y. October 11, 1989) (Motley, J.) (LEXIS, Genfed library, Dist. file), the district court in *Regan* had entered a restraining order which provided for the appointment of a monitor to be paid out of revenues generated by the alleged racketeering enterprise. On appeal, the Second Circuit *did not*, as the Government concedes, directly address the issue of compensation.

In *United States v. Ianniello*, 86 Civ. 1552, 1986 WL 4685 (S.D.N.Y. April 16, 1986) (Haight, J.) (LEXIS, Genfed library, Dist. file), the Government sought the appointment of a RICO monitor and attempted to shift the cost to defendants. Although Judge Haight did not find it necessary to appoint a receiver on the facts of the case as it then stood, he concluded on the record that with regard to the questions of compensation and expenses associated with a receiver, initially, the costs should be borne by the Government. Later, Judge Haight granted the Government's request for the appointment of a monitor. He ordered the receiver's compensation and expenses to be paid by the Government in the first instance. *United States v. Ianiello*, 646 F.Supp. 1289, 1300 (S.D.N.Y.1986) On the Government's appeal, the Second Circuit affirmed, holding that where

> the benefit of the receivership is thus enjoyed by the public, it seems appropriate at this stage to impose the costs of the receivership on the government, at least pending a resolution of its charges against the defendants.

*United States v. Ianiello*, 824 F.2d 203, 209 (2nd Cir.1987)

The Second Circuit noted that should a corporate entity later be shown to have benefitted from the monitor's appointment, it might, at that time, be appropriate "to reimburse the government for some, or perhaps all, of the expenses of the receiver," but the court found that "[t]hat is a question ... whose answer awaits the outcome of the underlying litigation." *Id.*

### III. Conclusion

It is clear that Congress provided a method under Sections 1963(e) [1] and (f) [2] to reimburse the Government for the expenses associated with forfeiture, including the maintenance and custody of forfeitable property should the Government succeed in proving its case.

For the foregoing reasons, this court affirms its prior decision, and concludes that until such time as defendants may be convicted, the monitor's expenses and compensation will be paid by the Government.

---

1. 18 U.S.C.A. Section 1963(e) reads:
   Upon conviction of a person under this section, the court shall enter a judgment of forfeiture of the property to the United States and shall also authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper. Following an entry of an order declaring the property forfeited, the court may, upon application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any other action to protect the interest of the United States in the property ordered forfeited. Any income accruing to,

or derived from, an enterprise or an interest in an enterprise which has been ordered forfeited under this section may be used to offset ordinary and necessary expenses to the enterprise which are required by law, or which are necessary to protect the interests of the United States or third parties.

2. 18 U.S.C.A. Section 1963(f) reads, in pertinent part:
   [T]he proceeds of any sale or other disposition of property forfeited under this section and any moneys forfeited shall be used to pay all proper expenses for the forfeiture and the sale, including expenses of seizure, maintenance and custody of the property pending its disposition, advertising and court costs ...