USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-2278 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. REAL PROPERTY IN WATERBORO, ET AL., Defendants, Appellees, v. PATRICK CUNAN, Claimant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ No. 94-1599  UNITED STATES OF AMERICA, Appellant, v. RICHARD J. DECATO, JR., ET AL., Defendants, Appellees. ___________________ APPEAL FROM THE UNITED STATES DISTRICT COURT  FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ___________________ No. 94-2036 UNITED STATES OF AMERICA, Appellee, v. RICHARD J. DECATO, JR., ET AL. Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Bownes, Senior Circuit Judge. ____________________ ____________________ Bruce E. Kenna, with whom Kenna, Johnston & Sharkey was on brief _______________ __________________________ for appellants. David S. Mackey, Assistant United States Attorney, with whom ________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ September 8, 1995 ____________________ BOWNES, Senior Circuit Judge. These consolidated BOWNES, Senior Circuit Judge. _____________________ appeals involve third-party claims to real properties in Bangor and Portland, Maine ("the Maine properties"), that the United States is trying to forfeit as part of a criminal prosecution in Massachusetts. The District Court for the District of Massachusetts granted the third-party claimants' motion to dismiss the Maine properties from the indictment. Because we find that the third-party claims were premature under the applicable criminal forfeiture statute, we vacate the order of dismissal and remand for further proceedings. I. __ The government alleges that Richard DeCato, Jr., the principal of a drug-dealing and money-laundering operation in New England, purchased the Maine properties with the proceeds of drug trafficking and installed his brother- in-law, Patrick Cunan, as the straw owner. In 1990, the government filed two civil forfeiture actions against the Maine properties in the District of Maine. Not surprisingly, Cunan was the only party to assert a claim in those actions. The civil forfeiture actions were sidetracked by pretrial proceedings, including an appeal to this court, see ___ United States v. TWP 17 R 4, 970 F.2d 984 (1st Cir. 1992), _____________ ___________ and by the government's pending criminal investigation in Massachusetts. In 1993, while both cases were pending, a federal grand jury in Massachusetts charged DeCato and the -3- 3 Cunans (Patrick and Patricia) with various offenses, including conspiracy to violate federal drug laws and money laundering. Count 37 of the indictment -- which named DeCato alone -- sought criminal forfeiture of the Maine properties under 21 U.S.C. 853. Four days after the indictment was returned, the government moved to dismiss the two civil forfeiture actions with prejudice, in deference to the criminal forfeiture count ______________ in Massachusetts. Judge Carter so dismissed the actions. The United States Marshal for the District of Maine continued to hold the assets at issue (including escrowed monies from the sale of some of the Portland properties) pursuant to instructions from the United States Attorney for the District of Massachusetts. Several months after the dismissal of the civil actions, Cunan moved in the District of Maine for an order directing the Maine Marshal to disencumber or release the Portland assets. He argued that the dismissal with prejudice of the civil actions barred, as a matter of res judicata, the ___ ________ criminal forfeiture of those assets in the District of Massachusetts. Judge Carter denied the motion, and Cunan appealed the denial in Appeal No. 93-2278. In the District of Massachusetts, the government moved to restrain all of the properties in the criminal forfeiture count. The Cunans moved, on res judicata grounds, ___ ________ -4- 4 to strike or dismiss the Maine properties from the indictment. Judge Young entered a temporary restraining order, took the Cunans' motion under advisement, and ultimately held that claim preclusion barred the criminal forfeiture of the Maine properties. The government moved for reconsideration, arguing for the first time that the Cunans, who are third parties to Count 37, must wait until an order of forfeiture has actually been entered before they may assert their claim. See 21 ___ U.S.C. 853(k) (barring third-party intervention in criminal forfeiture action except as provided in 853(n)). Judge Young denied reconsideration but noted that "the restraining order already entered remains in full force and effect." The government appealed the dismissal of the Maine properties in Appeal No. 94-1599. In July, 1994, DeCato entered a written plea agreement that forfeited "his legal and beneficial interests in all assets described in Count 37, including a cash forfeiture in the amount of $3,000,000." He acknowledged that all such assets were subject to forfeiture as "the proceeds of unlawful drug activity . . . and/or as substitute assets." DeCato also agreed to testify against the Cunans at their upcoming trial. The government then filed a supplemental motion to restrain the Maine properties, although the previous -5- 5 restraining order does not appear to have been lifted. It argued that notwithstanding any preclusive effect from the dismissal of the civil actions, the government was free to forfeit DeCato's interest in the Maine properties as "substitute assets" in place of the $3 million cash forfeiture. See 21 U.S.C. 853(p). Judge Young entered the ___ restraining order as requested, which the Cunans appealed in Appeal No. 94-2036. II. ___ We begin with the government's appeal from the dismissal of the Maine properties. In its motion for reconsideration, the government argued that the Cunans are barred by 21 U.S.C. 853(k) from asserting their third-party claim to the Maine properties until the properties have actually been ordered forfeited to the United States. We consider this argument on the merits, despite the government's possible waiver below, for two reasons. First, the district court did not expressly rely upon waiver in denying the motion for reconsideration. Second, the Cunans have not asserted waiver on appeal.1  ____________________ 1. We recognize that the government's belated argument is possibly a jurisdictional one, to the extent that Congress may have barred the Cunans from raising, and the district court from considering, their claim of ownership of the Maine properties. See Halleran v. Hoffman, 966 F.2d 45, 47 (1st ___ ________ _______ Cir. 1992) ("A challenge to federal subject matter jurisdiction may be raised at any time, including for the first time on appeal."). We express no opinion on this and do not rely on it. -6- 6 The bar on third-party intervention in 21 U.S.C.  853(k) provides: (k) Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may -- (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this subchapter; or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section. Section 853(n), the subsection cited in 853(k), is a wait- and-see provision: "[f]ollowing the entry of an order of ___________ forfeiture," the United States is required to publish notice of the order to interested third parties. 853(n)(1) (emphasis added). "Any person . . . asserting a legal interest in property which has been ordered forfeited to the United States" may then "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 853(n)(2). The government argues that 853(k) bars third parties such as the Cunans from participating in pre- forfeiture proceedings under any circumstances. We disagree. A statutory exception to the bar is found in 853(e) ("Protective orders"): where the government seeks a pre- indictment protective order against the property alleged to -7- 7 be subject to forfeiture, "persons appearing to have an interest in the property" must be afforded notice and an opportunity for a hearing. 853(e)(1)(B). There is no suggestion that third parties are excluded from this process, even though restraining orders necessarily precede forfeiture orders. In fact, the legislative history of the bar on third-party intervention cautions that "[t]his provision is not intended to preclude a third party with an interest in property that is or may be subject to a restraining order from participating in a hearing regarding the order . . . ." S. Rep. No. 225, 98th Cong., 2d Sess. 206 n.42 (1983) (explaining parallel provision of RICO statute), reprinted in _________ __ 1984 U.S.C.C.A.N. 3182, 3389 n.42. The legislative history, moreover, makes no distinction between pre-indictment and post-indictment restraining orders; evidently, third parties may "participat[e]" in both types of restraining order proceedings. Cf. id. at 3386 (noting that although "the ___ ___ post-indictment restraining order provision [ 853(e)(1)(A)] does not require prior notice and opportunity for a hearing," the provision "does not exclude . . . the authority to hold a hearing subsequent to the initial entry of the order . . . ."). This exception to the bar on intervention may reflect due process concerns. Section 853(e) presents a special problem for third parties, who face not only the -8- 8 potential forfeiture of property in which they claim an interest, but also immediate restraints upon property that may be in their control. A restraining order directed at third parties is "strong medicine," United States v. Regan, ______________ _____ 858 F.2d 115, 121 (2d Cir. 1988), whether it is entered before or after the indictment. We conclude that under 853(e), third parties claiming an interest in restrained or potentially restrainable property may "participat[e]" in the associated restraining order proceedings. We now ask whether the Cunans participated in those proceedings in the manner contemplated by Congress. After examining the structure and legislative history of 853(e), we hold that the Cunans' res judicata ___ ________ argument was prematurely made. Broadly speaking, the government can seek protective orders in two contexts: before an indictment has been filed, or after. To obtain a pre-indictment protective order, the government must show, among other things, that "there is a substantial probability that the United States will prevail on the issue of forfeiture . . . ."  853(e)(1)(B). By contrast, under 853(e)(1)(A), the indictment itself establishes the merits of the government's case, and courts may enter a protective order "upon the filing of an indictment . . . alleging that the property with respect to which the order is sought would, in the event of -9- 9 conviction, be subject to forfeiture . . . ." The text of  853(e)(1)(A) nowhere suggests that participants in a post- indictment protective order proceeding can challenge the underlying forfeitability of the property. That would turn an ancillary proceeding into the main event -- a result at odds with Congress' desire to "assure a more orderly disposition of both the criminal case and third party claims." 1984 U.S.C.C.A.N. at 3390. The legislative history of 853(e)(1)(A) confirms this reading, for it expressly limits the scope of arguments that can be raised by participants in a post-indictment  853(e) proceeding. "For the purposes of issuing a restraining order, the probable cause established in the indictment . . . is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based." 1984 U.S.C.C.A.N. at 3386. If the court elects to "hold a hearing subsequent to the initial entry of the order . . . the court may at that time modify the order or vacate an order that was clearly improper (e.g., ____ where information presented at the hearing shows that the property restrained was not among the property named in the indictment). However, it is stressed that at such a hearing the court is not to entertain challenges to the validity of _____________________________________________________________ the indictment." Id. (emphasis added). We think these ________________ ___ provisos were meant to apply to both criminal defendants and -10- 10 third-party claimants. The purpose of a restraining order proceeding, after all, is to preserve at-risk property for trial, not to determine whether the property should have been included in the indictment. Under 853(e)(1)(A), parties claiming an interest in restrained or potentially restrainable property may not use the restraining order proceeding to attack the indictment itself. That is what the Cunans tried to do. Their res ___ judicata claim states, in essence, that the indictment is ________ invalid because criminal forfeiture as a cause of action has vanished. This direct challenge to the validity of the indictment cannot be heard in a restraining order proceeding. To challenge the forfeitability of the Maine properties, the Cunans must await the entry of an order of forfeiture and petition for a hearing under 853(n)(2), at which time they may press their claim that they have a superior interest in the properties as a matter of res judicata. See  ___ ________ ___ 853(n)(6)(A) (forfeiture order shall be amended if the claimant's right, title, or interest in the property was vested or superior to that of the defendant at the time of the acts giving rise to the forfeiture). See also United ___ ____ ______ States v. Reckmeyer, 836 F.2d 200, 206 (4th Cir. 1987) ______ _________ (noting that the petitioners' post-forfeiture claim under  853(n) "is a fundamental one that . . . attacks the validity of the forfeiture order itself"). -11- 11 We acknowledge that it may be difficult in some cases to establish the proper limits of third-party participation in restraining order proceedings. On the one hand, premature attacks upon the validity of the indictment - - the type of argument made by the Cunans -- are clearly barred. On the other, prudential arguments concerning the burdens of restraint are clearly permitted by the statute, which recognizes the due process concerns that are triggered by judicial orders aimed at third parties. Cf. Regan, 858 ___ _____ F.2d at 121-22 (delineating circumstances under which such orders should not be entered). Some arguments may not fall neatly on either side of the line. In Regan itself, for _____ example, the third-party claimant, a partnership whose partners included the criminal defendants, was permitted to challenge the potential forfeitability of partnership assets under RICO's forfeiture provision, albeit without disputing the factual allegations of the indictment. See also United ___ ____ ______ States v. Wu, 814 F. Supp. 491, 494 (E.D. Va. 1993) ______ __ (speculating that the third-party spouse of the defendant might be entitled to intervene in restraining order proceeding in order to contest the breadth of the order). At any rate, the Cunans' res judicata argument falls well on the ___ ________ forbidden side of the line. Our holding is limited to the arguments made by the Cunans. Specifically, the Cunans do not argue, and we do not -12- 12 consider, whether the Due Process Clause may sometimes require that interested parties be given an opportunity to challenge a restraining order, on the merits of the indictment if necessary, before the entry of an order of forfeiture. Cf. United States v. Harvey, 814 F.2d 905, 929 ___ ______________ ______ (4th Cir. 1987) ( 853(e)(1)(A) violates due process to the extent that it authorizes ex parte, post-indictment __ _____ restraining orders without opportunity for a post-restraint hearing other than the criminal trial itself); United States _____________ v. Crozier, 777 F.2d 1376, 1382-84 (9th Cir. 1985) (  _______ 853(e)(1)(A) violates due process by not guaranteeing third parties or criminal defendants an opportunity to challenge a post-indictment restraining order until after forfeiture has been ordered). Here, the district court permitted the Cunans to participate in the restraining order proceedings; in fact, it granted the Cunans more process than was provided by the statute. III. ____ Our holding moots the Cunans' appeals in No. 94- 2036 (from Judge Young's entry of a restraining order) and No. 93-2278 (from Judge Carter's denial of the motion to disencumber or release the Portland assets). It does not matter whether Judge Carter should have granted the motion to disencumber, because Judge Young subsequently entered a restraining order in the Massachusetts prosecution, and that -13- 13 order cannot be challenged on the sole ground -- res judicata ___ ________ -- raised by the Cunans on appeal. That leaves us with no basis for granting the only relief that the Cunans seek in Appeal No. 93-2278, i.e., the return of the Maine properties. ____ -14- 14 IV. ___ For the foregoing reasons, we vacate the March 18, ______ 1994 order of the Massachusetts District Court dismissing the Maine properties from Count 37 of the indictment, and remand ______ the case to that court for proceedings consistent with this opinion. -15- 15