**UNITED STATES of America**

v.

**Mario GIGANTE, et al., Defendants.**

**No. 96 Cr. 466 (JSR).**

United States District Court,
S.D. New York.

Dec. 3, 1996.

Mary Jo White, United States Attorney by Michael Tabak, Stan Okula, Asst. U.S. Attys., for U.S.

Litman, Asche, Lipkin & Giorella, New York City, by Jack Litman, for Mario Gigante.

James M. Larossa, New York City, for Salvatore Gigante.

Rubinstein & Corozzo PC, Ron Rubinstein, New York City, for Louis Corso.

J. Bruce Maffeo, New York City, for Nicholas Milo, J & T Recycling Co.

Hoffman & Pollok, New York City by John Pollok, for Thomas Milo.

Burke, McGlinn & Miele, Patrick Bucke, Suffern, NY, for Frank Celli.

Anthony V. Lombardino, Richmond Hill, NY, for Benny Villani.

Kase & Durker, John Kase, Garden City, NY, for Suburban Carting Corp., Trottown Transfer, Inc., Chestnut Equipment Leasing Corp., DMF Excavating Corp., Mamaroneck Truck Repair, Inc., Enviro Express, Inc., Recycling Industries Corp.

McCormack, Damiani, Lowe & Mellion, Gerard Damiani, New City, NY, for All Waste Systems, Inc.

Christy & Viener, Franklin B. Velir, New York City, for Compaction Systems Corp of Connecticut, Inc.

Burstein & Fass LLP, Judd Burstein, New York City, for Al Turi Landfill, Inc.

Jay Goldberg PC, New York City By Seth Ginsberg, Butler, Fitzgerald & Potter PC,

Thomas A. Butler, New York City, for Mahwah Homes, Inc., Route 55 Corp.

Donald A. Mitchell, Danbury, CT, for Acorn Equipment Leasing Corp.

## OPINION AND ORDER

RAKOFF, District Judge.

The question before the Court is whether the consent of all parties in a criminal RICO action enables a court, in the exercise of its discretion, to approve the voluntary pre-trial restraint of property that may include assets that otherwise could not be restrained prior to trial.

The question arises in the following way. On June 21, 1996 a federal grand jury returned a 61-count indictment charging violations of RICO[1] and other federal criminal statutes. Contemporaneously, the Government applied under 18 U.S.C. § 1963(d)(1) for the restraint of certain of the defendants' assets. On June 24, 1996, the Hon. Barrington D. Parker, Jr. entered the requested order, preliminarily restraining up to $100 million of the defendants' property. It appears that the restrained property may have included both "traceable" assets, i.e., assets that would be forfeited to the Government in the event of conviction because they bore some specified relation to the alleged RICO crimes under 18 U.S.C. § 1963(a),[2] and also "substitute" assets, i.e., assets that, while unrelated to the alleged crimes, would, under 18 U.S.C. § 1963(m),[3] be forfeitable at the time of conviction to the extent that the traceable assets proved unavailable. However, Judge Parker had no occasion to focus on this distinction or to consider whether "substitute" assets were properly the subject of a pre-trial restraint.

Thereafter, the case was assigned to this Court. On October 28, 1996, the Government, with the consent of all relevant defendants, applied for a "Stipulated Post-Indictment Restraining Order" that, in addition to confirming the prior order, would authorize a consensually-selected "Monitor" to safeguard the restrained assets from dissipation and waste during the pendency of this action. In his declaration in support of the application, the Assistant United States Attorney brought to the Court's attention that a possible effect of the proposed Stipulated Order would be to restrain substitute assets prior to trial. But, while noting in a footnote that several circuits have held that "substitute assets may not be restrained pending trial," the Government argued that these holdings "are contrary to the Second Circuit's reasoning in *United States v. Regan*, [858 F.2d 115 (2d Cir.1988)]." Tabak Affidavit, at 8 n. 2. In subsequent written and oral submissions, the Government also drew the Court's attention to a recent Memorandum Order of the Hon. Lewis A. Kaplan, in which Judge Kaplan, rejecting a defendant's challenge to the pre-trial restraint of his substitute assets, held that "[t]he Court of Appeals' position in

1. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

2. 18 U.S.C. § 1963(a) provides in pertinent part that:

> Whoever violates any provision of section 1962 of this chapter ... shall forfeit to the United States ...
> (1) any interest the person has acquired or maintained in violation of section 1962;
> (2) any
> (A) interest in;
> (B) security of;
> (C) claim against; or
> (D) property or contractual right of any kind affording a source of influence over;
> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
> (3) any property constituting, or derived from, any proceeds which the person obtained,

directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

3. 18 U.S.C. § 1963(m) provides in pertinent part that:

> If any of the property described in subsection (a), as a result of any act or omission of the defendant—
> (1) cannot be located upon the exercise of due diligence;
> (2) has been transferred or sold to, or deposited with, a third party;
> (3) has been placed beyond the jurisdiction of the court;
> (4) has been substantially diminished in value; or
> (5) has been commingled with other property which cannot be divided without difficulty;
> the court shall order the forfeiture of any other property of the defendant up to the value of [such] property....

*Regan* inescapably leads to the conclusion that it views the pretrial restraint of substitute assets as permissible." *United States v. Bellomo,* No. 96 Cr. 430 (S.D.N.Y. Sept. 16, 1996).

I read *Regan* more circumspectly. In my view *Regan,* to the limited extent it addresses substitute assets, is concerned only with the equitable obligations of a court to minimize hardships to third parties impacted by a RICO restraining order.

The primary question before the Court of Appeals in *Regan* was whether RICO authorized pre-trial restraint of *traceable* assets in the hands of third parties. *Regan,* 858 F.2d at 116–17. Upholding such restraints, the Court went on to note that "orders directed at third parties are strong medicine and should not be used where measures that are adequate and less burdensome on the third parties are available." *Id.* at 121. The Court found that the burden on the third parties in *Regan* could be eased by allowing them voluntarily to substitute other assets of equal value for the traceable assets restrained. As the Court explained, following any conviction such substitute assets would, by virtue of § 1963(m), be forfeitable to the extent that traceable assets were unavailable. *Id.* at 120. Consequently, there could be no harm to any party in permitting the third parties to voluntarily substitute such other assets for the restrained traceable assets prior to trial.

The Court of Appeals thus held "that where the nature of the defendants' forfeitable property makes the imposition of a restraining order burdensome on third parties, the district court should, as an alternative, restrain assets of the defendant equal in value to that of the unrestrained forfeitable property." *Id.* Unlike Judge Kaplan, I read this simply as an instruction to district courts as to how to exercise their "inherent equitable jurisdiction." *United States v. Moore,* 340 U.S. 616, 619, 71 S.Ct. 524, 526, 95 L.Ed. 582 (1951). *See also, e.g., Porter v. Warner*

*Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946) ("Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction").

*Regan,* then, says nothing about the power of a court to compel the forcible pre-trial restraint of substitute assets over the asset-holder's objection. Nor, indeed, had any Circuit Court reached that issue at the time *Regan* was decided in 1988.[4] Subsequently, however, no fewer than five Circuits decided the issue, and all but one held that substitute assets could not be involuntarily restrained prior to trial. *See United States v. Field,* 62 F.3d 246 (8th Cir.1995); *United States v. Ripinsky,* 20 F.3d 359 (9th Cir.1994); *In re Martin,* 1 F.3d 1351 (3d Cir.1993); *United States v. Floyd,* 992 F.2d 498 (5th Cir.1993) (en banc); *but see In re Billman,* 915 F.2d 916 (4th Cir.1990), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991).

▇ Support for the majority conclusion is manifest in both the applicable statutory language and the pertinent legislative history. The RICO provision authorizing pre-trial restraints, § 1963(d)(1), states simply that "upon application of the United States, the Court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of *property described in subsection (a)* for forfeiture under this section" (emphasis added). Subsection (a), as previously noted, describes "traceable" property, *i.e.,* assets having some specified relation to the underlying RICO violation. By contrast, subsection (d)(1) contains no reference whatever to subsection (m), the section describing "substitute" assets. It follows that subsection (d)(1) only authorizes the pre-trial restraint of traceable assets.

The legislative history is equally clear. The report of the Senate Committee that drafted the pertinent provisions of what ulti-

---

4. In the Southern District of New York, however, Judge Owen had already held that substitute assets could not be forcibly restrained prior to trial. *United States v. Chinn,* 687 F.Supp. 125, 126 (S.D.N.Y.1988). The fact that the Court in *Regan* makes no mention of *Chinn* is still further indication that the Court of Appeals did not believe it was deciding the issue of involuntary pre-trial restraint of substitute assets.

mately became subsection (d)(1) states that "the [pre-trial] restraining order provision applies only to [traceable] property. It may not be applied with respect to other assets that may ultimately be ordered forfeited under the substitute assets provision." Senate Report No. 97–520, 97th Cong., 2d Sess. 10 n. 18 (1982).

This Court concludes that under RICO substitute assets may not be involuntarily restrained prior to trial and that nothing in *Regan* holds to the contrary. But *Regan* does make clear that a district court has inherent equitable power to mitigate hardships by permitting a party to voluntarily substitute non-traceable assets of equivalent value for restrained traceable assets. A roughly similar exercise of equitable discretion is what the parties here propose in requesting that the Court approve the voluntary restraint of $100 million of the defendants' property without undertaking to determine whether or not the assets are traceable under § 1963(a). There appears no reason why a court that otherwise has jurisdiction over a case under RICO's broad mantle should be prohibited from exercising its inherent equitable powers to authorize a consensual agreement of this kind.

Accordingly, for the foregoing reasons, the parties' application for the Stipulated Post–Indictment Restraining Order is granted.

SO ORDERED.