UNITED STATES, Appellee,

v.

**Ralph L. MALING, Defendant, Appellant.**

UNITED STATES, Appellee,

v.

**Keith MALING, Defendant, Appellant.**

UNITED STATES, Appellee,

v.

**Chris MALING, Defendant, Appellant.**

UNITED STATES, Appellee,

v.

**Paul RIZZO, Defendant, Appellant.**

Nos. 90–1996, 90–1998 to 90–2000.

United States Court of Appeals,
First Circuit.

Heard May 6, 1991.
Decided Aug. 26, 1991.

Joshua Dratel with whom Gerald B. Lefcourt, Gerald B. Lefcourt, P.C., Martin G. Weinberg, Oteri, Weinberg & Lawson, Earle C. Cooley, Cooley, Manion, Moore & Jones, and Richard Ivker were on brief, for defendants, appellants.

Paul V. Kelly, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

This appeal focuses upon the interpretation of a portion of a particular Plea Agreement. Appellants argue that the Agreement imposes an overall ceiling of $2.8 million on the amount that appellants are to pay the Government through criminal fines and forfeiture, and that the district court should have been made aware of the Agreement's meaning at sentencing. We agree with them and we therefore remand this case for resentencing in respect to fines.

## I

### Background

1. *The Agreement.* The Government charged the appellants and several other individuals with serious drug, fraud, and tax crimes. It entered into a detailed Plea Agreement, the most important terms of which committed the appellants to plead guilty, while committing the Government to drop certain charges and to recommend to the sentencing court certain specific prison terms, ranging from 3½ to 7 years, depending on the individual. The Agreement specified that the Government would make its recommendations "pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure," which Rule specifies that the Government makes its "recommendation"

> with the understanding that such recommendation ... shall not be binding upon the court.

Two paragraphs of the Agreement specifically concern forfeiture and fines. Paragraph 4, describing forfeitures, begins by stating,

> In lieu of a criminal fine, the defendants voluntarily and collectively agree to forfeit to the United States, prior to the date of sentence, assets and property with a fair market value totalling no less than $2.8 million....

Paragraph 6 of the Agreement states,

> Given the agreement as to forfeitures, the United States Attorney agrees not to recommend the imposition of any fines.

2. *Sentencing.* When appellants appeared before the district court to change their pleas to guilty, the assistant United States attorney said the following:

> This plea arrangement, your Honor, is pursuant to 11(e)(1)(B), which, as the court knows, is the provision which allows the court discretion, in terms of

imposing sentence. I just wanted to make sure that the court ... had looked at the numbers ... and had agreed not to exceed the Government's recommendation....

The court replied, "That is right." After the change of plea, the court asked, "What about the imposition of a fine?" One of appellants' counsel answered,

> The U.S. Attorney pursuant to the plea agreement, has recommended that there be no fine, in lieu of the forfeitures.

The following exchange then took place:

> The Court: I thought he made no recommendation either way.
>
> Counsel: I believe ... paragraph 4 and paragraph 6....
>
> The Court: Well, all I see is he agrees not to make a recommendation as to a fine. That leaves me free to propose a fine.

Counsel then said it was the "understanding of the parties" that the appellants would not have to pay more than the $2.8 million forfeiture. The court pointed out that the Agreement left it free to impose a fine. The court then imposed fines on all four appellants in a total amount of $525,-000.

3. *The Rule 35 Hearing.* Sometime after sentencing, appellants and the Government both asked the court to modify its sentence in respect to fines. Defense counsel told the court that appellants still owed the Government $635,000 of the $2.8 million forfeiture, that a falling real estate market had reduced the value of appellants' two remaining pieces of property, and that all concerned wanted the Government to take the remaining property by way of forfeiture.

Government counsel did not disagree with defense counsel's statement, but he added,

> It is the Government's strong preference that any monies generated by the sale of assets that were attributed to drug dealing be applied first to the forfeiture, and then whatever money left over paid or allocated towards the fines.

Subsequently, the court issued an order that accepted the Government's recommendation. It said that

> any monies generated by the sale of assets that were attributed to drug dealing be applied first to the forfeiture and then whatever money is left over be paid towards the fines.

The order does not solve appellants' problem. They point out that if their remaining property should turn out to be worth more than the $635,000 they still owe on the forfeiture, they will have to use the excess to pay up to $525,000 in fines. This potential total of $3.325 million exceeds the $2.8 million ceiling that, in their view, the Plea Agreement imposed. And, they consequently appeal the court's sentence insofar as it imposes a fine.

## II

### *The Meaning of the Plea Agreement*

■ Appellants argue that, given the Plea Agreement, the sentencing court lacked the legal power to impose a fine. But, we do not see how that could be so. The Agreement itself makes clear that the Government made its sentencing recommendation to the court under Fed. R.Crim.P. 11(e)(1)(B). The Government called that fact to the court's attention just prior to the appellants' change of plea. And, that Rule specifies that such a "recommendation" is just what it says, namely a recommendation that does not bind the court. *See United States v. Garcia–Pupo,* 845 F.2d 8, 10 (1st Cir.1988); *United States v. Khoury,* 755 F.2d 1071, 1073 n. 1 (1st Cir.1985); *United States v. Keefe,* 621 F.2d 17, 19 n. 1 (1st Cir.1980). Appellants seem to say that the court may have bound itself by saying (just prior to the change of plea) that it "had looked at the numbers" and would not "exceed the Government's recommendation." But, all parties here apparently agree that, in context, the word "numbers" referred to prison terms, not to fines.

■ Appellants also argue that the Government failed to live up to its promise, made in the Agreement, to recommend to

the court that it not impose any fines. Instead, the Government simply remained silent about the matter. They correctly add that the Government is legally bound to fulfill the promises that it makes in a plea agreement. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Kurkculer,* 918 F.2d 295 (1st Cir.1990). And, they conclude that the sentencing procedure suffered a fatal flaw.

The problem with this argument is that, like the district court, we can find no promise in the Agreement of the sort appellants mention. The Agreement does not say, the Government "agrees to recommend no imposition of any fine." Rather, it says, the Government "agrees not to recommend the imposition of any fines." The placing of the negative "no" or "not" makes a critical difference. It permits the Government to fulfill its promise by remaining silent. The wording of that promise, in so detailed an agreement, seems unlikely to have been inadvertent. And, we do not see how we can read this language to mean other than what it says.

■ On the other hand, we do agree with appellants' basic point, namely that the Agreement means to impose a $2.8 million ceiling on the total amount (fines plus forfeitures) that the Government would seek to collect. We believe it does this, however, not in paragraph 6, but in paragraph 4. That paragraph specifies that defendants' promise to forfeit $2.8 million is "in lieu of a criminal fine." The later paragraph 6 begins its description of the Government's promise by a cross-reference to 4, namely "Given the agreement as to forfeitures." The natural reading of the two paragraphs together is that imposition of a fine relieves the defendants of their promise to forfeit, dollar for dollar. Moreover, given the comprehensive nature of the Agreement, the objective of which seems final disposition of both criminal and forfeiture liability, we believe it would bar the Government, in such circumstances, from seeking to impose any additional (not-agreed-to) forfeiture liability.

This interpretation of the Agreement means that the Government violated the Agreement, at least at the Rule 35 hearing, when it asked the court to order amounts "generated by the sale of assets" to be "applied first to the forfeiture" and then "money" that is "left over be paid towards the fines." This recommendation placed the appellants at risk of having to pay more than $2.8 million total. Since the district court's subsequent order explicitly followed the Government's recommendation, we set that order aside. Moreover, since all the parties apparently believe that some kind of Rule 35 relief is appropriate and, since there seems to have been confusion during the sentencing proceedings about the meaning of the Plea Agreement, we vacate the sentence insofar as it imposes fines upon appellants, and remand for resentencing in respect to fines. Although the Agreement does not bind the district court, we believe the appellants should now be sentenced with the district court fully aware of the Agreement's efforts to impose a $2.8 million cap upon the appellants' total financial liability.

*So ordered.*