UNITED STATES of America,

v.

John A. GOTTI, Louis Ricco, Mario Antonicelli, Gregory Depalma, Craig Depalma, Michael Sergio, Stephen Sergio, William Marshall, Dominick Loiacono, Robert Sanseverino, Leonard Minuto, Sr., Steven Fortunato, Vincent Zollo, Peter Forchetti, Christian Binnie, John Forcelli, Marco Barros, Anthony Plomitallo, Michael Zamburos, Salvatore Locascio, Angelo Prisco, John Sialiano and Dennis McLain, Defendants.

No. 98 CR. 42(BDP).

United States District Court,
S.D. New York.

March 12, 1998.

Carol Sipperly, Marjorie Miller, Asst. U.S. Attys., Vincent Heintz, Special Asst. U.S. Atty., U.S. Attorney's Office, White Plains, NY, for U.S.

Gerald Shargell, Sarita Kedia, Bruce Cutler, New York City, for John A. Gotti, Jr.

Pat Stitso, Bronx, NY, for Louis Ricco and Mario Antonicelli.

Robert L. Ellis, New York City, for Gregory DePalma.

John W. Mitchell, LaRossa, Mitchell & Ross, New York City, for Craig DePalma.

Murray Richman, Kaminsky & Rich, White Plains, NY, for Michael Sergio and Leonard Minuto, Sr.

Ronald L. Kuby, New York City, for Stephen Sergio.

William Aronwald, Aronwald & Pykett, White Plains, NY, for William Marshall.

Peter J. Peluso, New York City, for Dominick Loiacono.

Paul Rinaldo, Grossman Lavine & Rinaldo, Forest Hills, NY, for Robert Sanseverino.

Joseph DeGuardia, Bronx, NY, for Steven Fortunato.

Richard A. Rhebock, Jericho, NY, for Vincent Zollo.

Andrew Weinstein, New York City, for Peter Forchetti.

Bruce P. Bendish, Goodrich & Bendish, White Plains, NY, for John Forcelli.

Stephen Lewis, White Plains, NY, for Christian Binnie.

Thomas DeGregorio, Bronx, NY, for Marco Barros.

Joseph Corozzo, New York City, for Anthony Plomitallo.

Barry E. Schulman, Brooklyn, NY, for Michael Zambouros.

Debra A. Karsen, Jay Goldberg, Richard Ware Levitt, New York City, for Salvatore Locascio.

Donald Manno, Cherry Hill, NJ, for Angelo Prisco.

J. Edward Meyer, Meyer & Wild, New York City, for John Sialiano.

Dominick Porco, Scarsdale, NY, for Dennis McClain.

## OPINION AND ORDER

PARKER, District Judge.

On January 20, 1998, the 23 defendants in this case were charged in a 60 count indictment (the "Indictment") with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").[1] The Indictment alleges that the defendants, as participants in a criminal enterprise known as the Gambino Crime Family, engaged in extortion, fraud, loansharking, money laundering, obstruction of justice, and illegal gambling, among other racketeering activities.

The Indictment seeks, among other things, the forfeiture, under 18 U.S.C. § 1963, of assets linked to the defendants' racketeering activities, including the cash proceeds of such activities. The Indictment alleges that the defendants' racketeering activities generated as much as $20 million of cash proceeds, much of which, although directly forfeitable, is not available for forfeiture. Consequently, the Indictment contemplates the forfeiture, pursuant to § 1963(m), of substitute assets of the defendants in the event that directly forfeitable assets, including cash proceeds, are unavailable for forfeiture at the time of judgment.

On January 20, 1998, the same day the defendants were indicted, District Court Judge Charles L. Brieant, upon an *ex parte* application of the government, issued a Post-Indictment Restraining Order (the "Restraining Order"), pursuant to 18 U.S.C. §§ 1963(d)(1)(A) and 982(b)(1)(A)[2], prohibiting the transfer or dissipation without government approval of various assets of 19 of

---

1. *18 U.S.C. § 1961 et seq.*

2. Because the analysis under § 982 is the same as under § 1963, the Court's discussion will refer solely to § 1963.

the defendants that would be forfeitable upon conviction, including "substitute assets" that would only be forfeitable to the extent directly forfeitable assets such as cash proceeds are not available. The substitute assets portion of the Restraining Order includes numerous parcels of real property, bank accounts, automobiles, and corporate interests held by the defendants, including, for example, 9 parcels of real property owned, directly or indirectly, by defendant John A. Gotti and 10 parcels of real property owned, directly or indirectly, by defendant Leonard Minuto, Sr. The sole issue on this motion is whether that portion of the Restraining Order applicable to substitute assets is proper.[3]

█ The analysis of this issue must, of course, begin with an examination of the statutory language. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ("In determining the scope of a statute we look first to its language.") (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). Subsection 1963(a) provides for the forfeiture of assets that are linked, directly or indirectly, to the racketeering enterprise. Subsection (a) states:

> Whoever violates any provision of section 1962 of this chapter... shall forfeit to the United States, irrespective of any provision of state law—
> (1) any interest the person has acquired or maintained in violation of section 1962;
> (2) any—
> (A) interest in;
> (B) security of;
> (C) claim against; or
> (D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racke-

teering activity or unlawful debt collection in violation of section 1962.

18 U.S.C. § 1963(a).

Additionally, to the extent that assets linked to a defendant's racketeering activity are unavailable for post-trial forfeiture, other assets of the defendant (i.e., substitute assets) may then be forfeited in an amount up to the value of the directly forfeitable assets if certain tests are met. 18 U.S.C. § 1963(m).

Section 1963(m) states:

> If any of the property described in subsection (a), as a result of any act or omission of the defendant—
> (1) cannot be located upon the exercise of due diligence;
> (2) has been transferred or sold to, or deposited with, a third party;
> (3) has been placed beyond the jurisdiction of the court;
> (4) has been substantially diminished in value; or
> (5) has been commingled with other property which cannot be divided without difficulty;
> the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

In order to preserve assets for post-trial forfeiture, § 1963(d)(1) empowers the court to "enter a restraining order or injunction...to preserve the availability of property described in subsection (a) for forfeiture under this section." Subsection 1963(d)(1), by its explicit terms, authorizes a restraining order applicable to directly forfeitable assets linked to racketeering activity (i.e., subsection (a) assets) but not substitute assets (i.e., subsection (m) assets). Thus, § 1963(d)(1)(A) does not, on its face, authorize a restraint of substitute assets.

Despite the apparent clarity of the statutory language, the government contends that § 1963(d)(1)(A) should be interpreted to apply to both directly forfeitable and substitute

---

**3.** The parties have briefed the issue and the Court heard oral argument on the motion on March 2, 1998. The defendants do not challenge the propriety of the Restraining Order as to those assets alleged to be directly forfeitable in the event of conviction.

assets. As authority for this proposition, the government relies, in part, on *United States v. Regan,* 858 F.2d 115 (2d Cir.1988), and on the legislative history and remedial purpose of the asset forfeiture and restraint provisions of the statute.

In *Regan,* our Court of Appeals addressed the permissibility of a pre-trial restraint burdening property held by unindicted third parties and concluded that § 1963(d)(1)(A) permits the issuance of a post-indictment restraining order applicable to such property. The indictment in *Regan* sought the forfeiture of proceeds of defendants' racketeering activity and of defendants' interests in the alleged RICO enterprise, the Princeton/Newport Group (the "Group"). The Group was not named as a defendant, nor were various third parties who, along with the defendants, were partners in the Group. The Group appealed from a pre-trial restraining order entered pursuant to § 1963(d)(1)(A) appointing a monitor to oversee the Group's activities and prohibiting transactions not in the ordinary course of business.

The government correctly notes that the *Regan* Court accepted the possibility of pre-trial restraint of substitute assets. The Court stated that "restraining orders, when entered before forfeiture, should be concerned with preserving assets equivalent in value to the potentially forfeitable property, and not necessarily the precise property." *Regan,* 858 F.2d at 121.

This observation, however, came in the context of the Court's consideration of less burdensome alternatives to a restraint on property of unindicted third parties. The Court went on to conclude that "where the nature of the defendants' forfeitable property makes the imposition of a restraining order burdensome on third parties, the district court should, as an alternative, restrain assets of the defendant equal in value to that of unrestrained forfeitable property." *Id.* In the *Regan* Court's view, a restraint on substitute assets might be warranted if restraints on directly forfeitable assets would unfairly burden third parties, a circumstance not applicable to the present case.

The fact that *Regan* permitted the pre-trial restraint of substitute assets in the limited circumstances of that case seems to us to fall considerably short of establishing the proposition that § 1963(d)(1)(A) invariably authorizes the restraint of substitute as well as directly forfeitable assets.[4] *Regan* endorsed substitute asset restraints in the event a restraint on directly forfeitable assets burdened unindicted third parties, and not because of the unavailability of directly forfeitable assets, as contemplated by § 1963(m).[5] Moreover, the specific restraint upheld by *Regan* did not apply to substitute assets but applied to directly forfeitable subsection (a) assets, where a burden was imposed on non-forfeitable assets held by third parties. Contrary to the government's submissions, these pronounced differences seem to us to render *Regan* not directly applicable to the circumstances presented by this motion.

Several other Courts of Appeal have addressed the issue and, except for the Fourth Circuit, each has determined that § 1963(d)(1)(A) does not authorize pre-trial restraint of substitute assets. The Fourth Circuit, which was the first to address the issue, concluded that § 1963(d)(1)(A) "read in conjunction with subsection (m)" does permit restraining orders applicable to substitute assets. *Billman v. McKinney,* 915 F.2d 916, 921 (4th Cir.1990). In reaching this conclusion, the Court emphasized that the

---

**4.** Based on the *Regan* Court's brief discussion of the issue, it is unclear whether the Court derived the district court's authority to enter a substitute assets restraining order from the statute or from the district court's equitable power.

**5.** The government contends that the circumstances presented by *Regan* meet the requirements of § 1963(m)(5), to which the *Regan* court turned in reasoning that substitute asset restraints might be permitted in certain situations. Subsection (m)(5), which relates to the forfeiture,

not to the pre-trial restraint, of substitute assets, allows the forfeiture of substitute property when directly forfeitable property has been commingled with other property and cannot be divided without difficulty. Subsection (m)(5) makes no mention of property held by third parties, but rather refers, on the one hand, to property linked to racketeering activity and, on the other hand, to property not linked to such activity. Thus, the applicability of subsection (m)(5) to the circumstances presented in *Regan* is questionable.

forfeiture provisions of § 1963 should be interpreted liberally in order to effectuate the remedial purpose of preserving "the defendant's assets for ultimate forfeiture if he is convicted."[6] *Billman,* 915 F.2d at 921.

Subsequently, the Third,[7] Fifth,[8] Eighth,[9] and Ninth [10] Circuits, all with the benefit of the Fourth Circuit's decision in *Billman,* have each held that the pre-trial restraint of substitute assets is not permitted by the statute. Each of these decisions, like ours, has been driven by the apparently unambiguous statutory language. *See Riley,* 78 F.3d at 371; *v. Field,* 62 F.3d at 249; *Ripinsky,* 20 F.3d at 363; *Martin,* 1 F.3d at 1359; *Floyd,* 992 F.2d at 502.

Two other courts in this District have recently reached divergent conclusions regarding the permissibility of restraint of substitute assets. In *United States v. Gigante,* 948 F.Supp. 279 (S.D.N.Y.1996), Judge Jed S. Rakoff concluded that "under RICO substitute assets may not be involuntarily restrained prior to trial and that nothing in Regan holds to the contrary." *Id.* at 282. In *United States v. Bellomo,* 954 F.Supp. 630 (S.D.N.Y.1997), Judge Lewis A. Kaplan, focusing on the *Regan* court's approval of substitute asset restraints "at least in some circumstances," concluded that "the logic of Regan...cannot be reconciled with" the claim that pre-trial restraint of substitute assets is not permitted. *Id.* at 653.

In support of its position here, the government also relies on the legislative history and broad remedial purpose of the statute's asset forfeiture and restraint provisions. However, a plethora of decisions teaches that resort to secondary or tertiary sources is unwarranted where, as here, the plain language of the statute is unambiguous.[11] *See, e.g., Salinas v. United States,* ⸺ U.S. ⸺, 118 S.Ct. 469, 473, 139 L.Ed.2d 352 (1997) (quoting *United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)); *United States v. Gonzales,* 520 U.S. 1, 117 S.Ct. 1032, 1033, 137 L.Ed.2d 132 (1997); *Adams Fruit Company, Inc. v. Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) (citation omitted).

The government is quite correct that in RICO cases where large amounts of cash proceeds are allegedly produced by racketeering activities, the forfeiture of substitute assets is crucial to furthering the remedial purpose of the statute and that the unavailability of pre-trial restraint of substitute assets would mean that, in some cases, assets ultimately subject to forfeiture could be dissipated, transferred, or otherwise made unavailable for forfeiture. The government might be better able to preserve assets for post-trial forfeiture if § 1963 authorized the pre-trial restraint of substitute assets. But, on our reading of the statute, that is not the policy that Congress has embraced, as evidenced by the language it chose to use. However wise a different or expanded statutory scheme might be, such matters are more properly addressed to Congress rather than to the Courts. Accordingly, this Court concludes that substitute assets may not be properly made subject to a pre-trial, post-

---

6. Although the court looked for support in its interpretation of the restraint provision to the Supreme Court's decisions in *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) and *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), it should be noted that both of those cases involved the forfeiture provisions of § 1963, not its restraint provision.

7. *In re Assets of Martin,* 1 F.3d 1351 (3d Cir. 1993).

8. *United States v. Floyd,* 992 F.2d 498 (5th Cir. 1993).

9. *United States v. Riley,* 78 F.3d 367 (8th Cir. 1996); *United States v. Field,* 62 F.3d 246 (8th Cir.1995).

10. *United States v. Ripinsky,* 20 F.3d 359 (9th Cir.1994).

11. In any case, the significance of the legislative history is uncertain. A 1982 report of the Senate Committee that drafted the substitute assets and restraining order provisions stated that the restraining order provision would not apply to substitute assets. S.Rep. No. 97–520, 97th Cong., 2d Sess. (1982) 10 n. 18. By the time those provisions were eventually enacted, however, that portion of the report had been deleted. S.Rep. No. 98–225, 98th Cong., 1st Sess. (1983) 191, 202–205.

indictment restraining order pursuant to § 1963(d)(1)(A).

For the reasons stated, the Restraining Order entered on January 20, 1998 is vacated as it pertains to the matters designated therein as substitute assets. The Restraining Order shall otherwise remain in effect. In view of the substantial divergence of the authority both within and without this Circuit on a matter of considerable significance to the administration of justice, this Order shall be stayed for ten days to afford the parties the opportunity to seek expeditious appellate review of the conclusions reached in this Opinion.

SO ORDERED.