**UNITED STATES of America,**

v.

**Bruce BERG, et al., Defendants.**

**No. 97 Crim. 0866(LAK).**

United States District Court,
S.D. New York.

April 6, 1998.

Alexander Shapiro, Robin W. Morey, Assistant United States Attorneys, Mary Jo White, United States Attorney, for U.S.

Michael H. Sporn, New York City, for defendant Bruce Berg.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case presents the question whether the Court may restrain substitute assets subsequent to indictment but before conviction in a case charging that the defendants are liable to substantial forfeitures.[1]

*Facts*

On March 5, 1998, a federal grand jury sitting in this District returned a 37–count

---

1. The issue arises here under the Comprehensive Drug Abuse Prevention and Control Act of 1970, as amended, specifically 21 U.S.C. § 853(e)(1)(A), and 18 U.S.C. § 982(a)(1). The same issue frequently arises also under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, specifically under 18 U.S.C. § 1963. As 18 U.S.C. §§ 982(a)(1) and 1963(a)(1) and 21 U.S.C. § 853(c)(1)(A) and 18 U.S.C. § 1963(d)(1)(A) are substantially identical, cases decided under one statute are equally authoritative with respect to the other insofar as the issue at bar is concerned.

superseding indictment charging Bruce Berg and others with conspiracy to violate 18 U.S.C. § 1956 and 31 U.S.C. §§ 5313(a) and 5324 as well as substantive violations of 18 U.S.C. §§ 5313(a) and 5324—in essence, that the defendant and others conspired to launder and structure the proceeds of an illegal gambling operation. The superseding indictment includes a forfeiture allegation that seeks, among other things, the forfeiture of any and all property involved in the charged money laundering and structuring offenses and all property traceable thereto up to $4.3 million and substitute assets. This reflects the determination of the grand jury that there is probable cause to believe that Berg and his co-conspirators received no less than $4.3 million in illegal gambling proceeds for structuring.

Following the superseding indictment, Chief Judge Griesa issued an *ex parte* post-indictment restraining order preventing the transfer or dissipation of Berg's assets and those of his co-conspirators. Berg and others promptly brought to the attention of the undersigned certain alleged errors and ambiguities in the text of the restraining order. Accordingly, on March 19, 1998, this Court signed a second post-indictment restraining order (the "Amended Order"), the object of which was to correct any failings in the original form of order, without prejudice to a motion to vacate.

Berg now has moved to vacate the Amended Order on the grounds that (i) the Court has no authority to enter a post-indictment restraining order *ex parte*, (ii) the assets of Berg that were restrained were obtained from legitimate sources and therefore are restrainable only as substitute assets, (iii) the Court lacks authority to restrain substitute assets prior to trial, and (iv) in any case, pretrial restraint of assets is not appropriate in this case.

## Discussion

### Availability of Ex Parte *Relief*

Berg begins with the contention that there is no statutory basis for granting a post-indictment restraining order without prior notice to the defendants. The government rejoins that the Court of Appeals' *in banc* decision in *United States v. Monsanto*[2] supports the proposition that the government is entitled to *ex parte* relief in appropriate circumstances in a case such as this.

There is no need to pass on this issue. The Amended Order was entered only after Berg received notice and an opportunity to be heard. The Court considers the motion to vacate the Amended Order *de novo*. In consequence, nothing turns on whether the statute (and *Monsanto*) authorized *ex parte* relief.

### The Availability of Pretrial Restraint of Substitute Assets

Berg argues that the assets restrained by the Amended Order include a passbook savings account and an automobile, both of which were the product of legitimate sources of income. He contends that the government is not entitled to restrain these assets prior to trial because they are not forfeitable as proceeds of the crime alleged and because the government lacks any authority to restrain substitute assets prior to conviction. The government counters that pretrial restraint of substitute assets is appropriate and, in any case, that the defendant may not challenge the forfeitability of assets prior to trial except in the context of a claim that the pretrial restraint of the assets effectively deprives him of the Sixth Amendment right to counsel. It argues, moreover, that Berg had no legitimate source of income during the relevant period and, in consequence, that the restrained assets are the product of the illegal activities that are the subject of the indictment. If, as the government argues, however, the pretrial restraint of substitute assets is appropriate, there is no need to determine the source of the assets that have been restrained. As long as their value is less than the amount potentially subject to forfeiture, the Court's authority to restrain them would be beyond question. Accordingly, the Court turns to that question.

**2.** 924 F.2d 1186 (2d Cir.) (in banc), *cert. denied,* 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991).

The question of pretrial restraint of substitute assets is a matter of controversy. The Fourth Circuit has held that pretrial restraint of substitute assets is appropriate.[3] Four other circuits have held that it is not authorized by the relevant statutes.[4] Our own circuit's only pronouncement on the subject, *United States v. Regan*,[5] has occasioned divergent views on the part of members of this Court, with Judges Parker and Rakoff holding that pretrial restraint of substitute assets is unauthorized and the undersigned previously holding that *Regan* indicates otherwise.[6]

My brethren and I agree, assuming the matter were one of first impression, that there are substantial grounds for concluding that the statutes in question do not permit the pretrial restraint of substitute assets. In my view, however, I am not at liberty to credit those arguments in view of the logic of *Regan*.[7]

The indictment in *Regan* charged a number of defendants with having conducted the affairs of Princeton/Newport Partners, L.P. and twenty investment companies owned or controlled by it (collectively "Princeton/Newport") through a pattern of racketeering activity and sought forfeiture of the defendants' interests in Princeton/Newport. Judge Stanton granted the government's application for an order restraining Princeton/Newport—which had not been indicted—from engaging in transactions outside the ordinary course of business absent prior approval and subjecting its affairs to review by a government-designated monitor, this on the theory that Princeton/Newport was a third party in possession of potentially forfeitable property of the defendants. Princeton/Newport chal-

lenged the propriety of the order directed at it, contending that the statute[8] did not authorize orders restraining unindicted third parties. The Second Circuit, however, rejected the argument, writing:

"The language of the provision in no way limits restraining orders to indicted persons where restraints on the defendants are insufficient to preserve potentially forfeitable property. On the contrary, the provision focuses on the potentially forfeitable property, not the parties to the criminal proceeding. The statute thus empowers the district court to 'take any other action' it believes necessary 'to preserve the availability of [that] property' in the event of the defendants' conviction. 18 U.S.C. § 1963(d)(1). This language reflects the primacy of Congress's concern for the preservation of forfeitable property pending the outcome of the criminal trial."[9]

Although the Circuit held that the statute permitted orders directed at unindicted third parties, it went on to question the necessity for such an order in the case before it, observing that "orders directed at third parties are strong medicine and should not be used where measures that are adequate and less burdensome on the third parties are available."[10] Given that the potentially forfeitable property was the defendants' partnership interests in Princeton/Newport, the panel went on to indicate that a restraint on assets of the defendants equal in value to any unrestrained forfeitable property would be appropriate:

"The government has conceded—as it must in light of the express provisions of

3. *In re Assets of Billman; U.S. v. McKinney*, 915 F.2d 916, 921 (4th Cir.1990), *cert. denied*, 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991).

4. *United States v. Riley*, 78 F.3d 367 (8th Cir. 1996); *United States v. Field*, 62 F.3d 246 (8th Cir.1995); *United States v. Ripinsky*, 20 F.3d 359 (9th Cir.1994); *In re Assets of Martin*, 1 F.3d 1351 (3d Cir.1993); *United States v. Floyd*, 992 F.2d 498 (5th Cir.1993).

5. *United States v. Regan*, 858 F.2d 115 (2d Cir. 1988).

6. *Compare United States v. Bellomo*, 954 F.Supp. 630, 653–54 (S.D.N.Y.1997); *id*, 1996 WL 938332 (S.D.N.Y. filed Sept. 16, 1996); *with United States v. Gotti*, No. 98 Crim. 42(BDP), 1998 WL 116631, at *4 (S.D.N.Y. Mar. 12, 1998); *United States v. Gigante*, 948 F.Supp. 279 (S.D.N.Y.1996).

7. *Regan, supra* note 5.

8. 18 U.S.C. § 1963(d)(1)(A).

9. 858 F.2d at 119.

10. *Id.* at 121.

Section 1963(d)(1)—that a bond in an amount equivalent to the value of the partnership interests at the time of the crimes would eliminate the need for the challenged order [directed to Princeton/Newport]. We believe it follows that a restraint on individual assets of similar value would also suffice. We note that Section 1963(n)(5) provides that where forfeitable property 'has been commingled with other property which cannot be divided without difficulty, the court shall order the forfeiture of any other property of the defendant up to the value of any property [so commingled.]' 18 U.S.C. § 1963(n)(5) (Supp. IV 1986). *Although this provision concerns the ultimate forfeiture, it surely suggests that restraining orders entered before forfeiture should be concerned with preserving assets equivalent in value to the potentially forfeitable property. We believe, therefore, that where the nature of the defendants' forfeitable property makes the imposition of a restraining order burdensome on third parties, the district court should, as an alternative, restrain assets of the defendant equal in value to that of the unrestrained forfeitable property.*" [11]

■ This passage, in my view, indicates that the Court of Appeals construed the statute—notwithstanding its lack of any provision expressly permitting pretrial restraint of substitute assets—as permitting precisely that. That, after all, is the only possible meaning of the Court's references to "preserving assets equivalent in value to the potentially forfeitable property" and restraining "assets of the defendant equal in value to that of the unrestrained forfeitable property." While my brethren surely are right in saying that it did so in the context of finding an alternative to a burdensome restraint on unindicted third parties, there is nothing about the statute or the Circuit's opinion that indicates that a court's authority to restrain

substitute assets is limited to such circumstances. In other words, if the relevant statutes do not authorize pretrial restraint of substitute assets, the Circuit would not have been free to remand so that the district court might restrain substitute assets in preference to assets of unindicted third parties. As I regard myself as bound by the logic of *Regan*, I am compelled to conclude that an order restraining substitute assets is permissible unless and until the Court of Appeals holds otherwise.

■ This conclusion disposes of Berg's contention that the Amended Order should be vacated because the accounts and assets restrained have no connection to the underlying offense—in other words, that they come from sources independent of the alleged crimes for which forfeiture is sought. The indictment seeks forfeiture of any and all property involved in the charged money laundering and structuring offenses and all property traceable thereto up to $4.3 million as well as substitute assets. Even assuming that the property that has been restrained is not the product of the charged offenses, it is subject to forfeiture as substitute assets, and there has been no showing that its value remotely approaches the defendant's $4.3 million exposure.[12] In consequence, even putting aside the government's contention that the defendant may not challenge the forfeitability of this property except by going to trial on the indictment, the availability of pretrial restraint of substitute assets renders this property subject to restraint.

*The Propriety of Pretrial Restraint in this Case*

In contending that pretrial restraint is inappropriate in this case, Berg makes two quite different arguments. He contends first that the gravamen of the charged offense is

---

11. *Id.* (emphasis added).

12. The property restrained includes (1) an automobile purchased in 1994 for $33,000, (2) an interest in a house purchased with others in 1988 for $315,000, subject to a mortgage of $195,000, toward which defendant's contribution was $40,-000, (3) a condominium purchased in 1991 for $125,000 subject to a mortgage of approximately $80,000, (4) two securities accounts and one bank account, the balances in which have not been disclosed to the Court, and (5) a safe deposit box, the contents of which have not been disclosed to the Court.

illegal bookmaking for which forfeiture is not available and that the government should not be permitted to "sidestep[ ] this technicality by charging the offense of money laundering (for which forfeiture is an available remedy)."[13]  There is also the briefest suggestion that the pretrial restraint should be vacated because there is no threat of dissipation of the assets.[14]

█ Berg's statutory argument is misguided.  For one thing, he simply is mistaken in asserting that forfeiture is not available in gambling cases, as 18 U.S.C. § 1955(d) expressly provides that "any property, including money, used in [operating an illegal gambling business] may be seized and forfeited to the United States."  Hence, although Berg has not been charged under Section 1955, his premise that the government has abused him by characterizing a gambling offense as money laundering in order to gain criminal forfeiture is erroneous.  Far more important, however, is the fact that the criminal forfeiture statute [15] broadly subjects to forfeiture all property "involved in" the offense of money laundering.  As Berg has not challenged the legal sufficiency of the money laundering charges in the indictment, the government is well within its rights in seeking forfeiture here.

█ Berg's final suggestion—that pretrial restraint is unduly harsh in this case—is unsupported by any substantial evidence or argument.  His brief asserts that there is no threat of dissipation of the restrained assets, but Berg's affidavit in support of the application shows just the contrary by stating that he needs access to the property to pay living expenses and attorney's fees because he does not have a regular paycheck.  While the Court does not exclude the possibility that it might grant some relief upon an adequate showing of need and adequate provision for securing the government, no such showing has been made to date.[16]

13.  Def.Br. 12–13.

14.  *Id.* 15–16.

15.  18 U.S.C. § 982(a)(1)(A).

*Conclusion*

For the foregoing reasons, Berg's motion to vacate the Amended Order is denied in all respects.

SO ORDERED.

16.  Berg is free to pursue the matter with the government.  Failing some mutually acceptable accommodation, he may reapply to this Court.