UNITED STATES of America, Appellant,

v.

John A. GOTTI, also known as John, Jr., also known as Junior; Mario Antonicelli, also known as Little Mario; Gregory DePalma, also known as Greg, also known as Ron; Vincent Zollo, also known as Vinny; Defendants–Appellees,

Louis Ricco, also known as Louie Bracciole, also known as Louie Brash; Craig DePalma; Michael Sergio, also known as Mikey Hop, also known as Hop; Stephen Sergio, also known as Sigmund the Sea Monster; Dominick Loiacono, also known as the Butcher; Leonard Minuto, Sr., also known as Cliff, also known as the Turtle; Steven Fortunato, also known as Guappo; Peter Forchetti, also

---

known as Fat Pete, also known as Jonesie; Anthony Plomitallo, also known as Anthony the Carpenter; William R. Marshall, also known as Willie; Robert Sanseverino, also known as Bobby Sans; Christian Binnie, also known as Chris; John Forcelli, also known as Bart; Marco Barros; Michael Zambouros, also known as Michael Z.; Salvatore Locascio, also known as Tore; Angelo Prisco; John Sialiano, also known as Goombah Johnnie; Dennis McLain, also known as Denny, Defendants.

No. 98–1159.

United States Court of Appeals, Second Circuit.

Argued July 16, 1998.

Decided Sept. 8, 1998.

Bart G. Van De Weghe, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, New York City; Sharon Cohen Levin and Robert E. Rice, Assistant United States Attorneys, of counsel), for Appellant.

Gerald L. Shargel, New York City (Sarita Kedia, of counsel), for Appellee John A. Gotti.

Before: WINTER, Chief Judge, POOLER, Circuit Judge, and DORSEY,[1] District Judge.

POOLER, Circuit Judge.

## BACKGROUND

On January 20, 1998, a New York grand jury indicted the 23 defendants in this case and charged them in 60 counts with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The indictment alleges that defendants participated in a racketeering enterprise known as the Gambino Family and engaged in extortion, fraud, loansharking, money laundering, obstruction of justice, and illegal gambling, among other unlawful activities. The indictment alleges that defendants'

1. The Honorable Peter C. Dorsey of the United States District Court for the District of Connecticut, sitting by designation.

racketeering activities generated as much as $20 million in cash.

The *indictment* seeks *forfeiture of assets* linked to defendants' racketeering activities, including the cash proceeds of those activities, pursuant to 18 U.S.C. § 1963(a)(1), (2), and (3). In addition, in the event that any of the specified assets become unavailable for forfeiture, the indictment seeks forfeiture of substitute assets, which are any other property of defendants up to the value of the forfeitable property. 18 U.S.C. § 1963(m). The indictment identifies as substitute assets various parcels of real property, money in bank accounts, interest in corporations, and automobiles.

On January 20, 1998, following return of the indictment, the United States District Court for the Southern District of New York (Brieant, J.), granted the government's application pursuant to 18 U.S.C. § 1963(d)(1)(A) for a post-indictment, pretrial restraining order. The restraining order prohibited the transfer or dissipation without government approval of 19 of defendants' assets, which would be forfeitable upon their conviction, and the prohibition also covered substitute assets that could be taken in the event that directly forfeitable assets were unavailable. On February 10, 1998, defendant John A. Gotti moved to vacate the part of the restraining order that pertained to substitute assets. Defendants Mario Antonicelli, Craig DePalma, and Vincent Zollo subsequently joined in that motion. Judge Parker granted the motions and vacated the restraining order insofar as it pertained to substitute assets. *See United States v. Gotti*, 996 F.Supp. 321 (S.D.N.Y.1998). The United States now appeals.

## DISCUSSION

■ On appeal, the United States argues that the post-indictment, pretrial restraint of substitute assets is permitted where, as here, the government has shown that directly forfeitable assets will be unavailable. The government argues that Section 1963(d)(1)(A) sweeps broadly and allows pretrial restraint of any property that "would, in the event of conviction, be subject to forfeiture under this section." 18 U.S.C. § 1963(d)(1)(A). The government also argues that the individual provisions of Section 1963 should not be read in isolation. According to appellant, finding that the pretrial restraint provisions of Section 1963(d)(1) pertain to substitute assets is the only way to effectuate the statute's purpose as a whole, which is to secure the availability of forfeitable assets upon conviction. Defendants argue that the statute's clear and unambiguous pretrial restraint provisions refer only to directly forfeitable property and that if Congress had intended to authorize the pretrial restraint of substitute assets, it would have done so explicitly. We review *de novo* the district court's finding that Section 1963(d)(1)(A) does not authorize the pretrial restraint of substitute assets, a purely legal issue of statutory interpretation. *See Perry v. Dowling*, 95 F.3d 231, 235 (2d Cir.1996) (citing *White v. Shalala*, 7 F.3d 296, 299 (2d Cir.1993)).

The RICO forfeiture provisions were intended to provide "new weapons of unprecedented scope for an assault upon organized crime and its economic roots" by providing "enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Russello v. United States*, 464 U.S. 16, 26–27, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citing Pub.L. No. 91–452, 84 Stat. 922, 923 (1970)) (quotations omitted). In that vein, pursuant to the terms of 18 U.S.C. § 1963(a), any person who violates any provision of 18 U.S.C. § 1962 by engaging directly or indirectly in racketeering activity or the collection of unlawful debt, shall forfeit to the United States:

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person ob-

tained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

18 U.S.C. § 1963(a). To the extent that assets linked to a defendant's racketeering activity are unavailable for forfeiture as a result of any act or omission of the defendant, other substitute assets of the defendant may, in certain circumstances, be forfeited in an amount up to the value of the directly forfeitable assets. 18 U.S.C. § 1963(m). In addition, in order to preserve forfeitable assets pending trial, upon application of the United States, a court may

> enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—
>
> > (A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

18 U.S.C. § 1963(d)(1)(A). The question presented by this appeal is whether 18 U.S.C. § 1963(d)(1)(A) also authorizes the post-indictment, pretrial restraint of substitute assets even though it only mentions directly forfeitable "subsection (a)" assets in its text.

The district court concluded that Section 1963(d)(1)(A) "does not, on its face, authorize a restraint on substitute assets" and further stated that:

> [t]he government is quite correct that in RICO cases where large amounts of cash proceeds are allegedly produced by racketeering activities, the forfeiture of substitute assets is crucial to furthering the remedial purpose of the statute and that the unavailability of pre-trial restraint of substitute assets would mean that, in some cases, assets ultimately subject to forfeiture could be dissipated, transferred, or otherwise made unavailable for forfeiture. The government might be better able to preserve assets for post-trial forfeiture if § 1963 authorized the pre-trial restraint of substitute assets. But, on our reading of

the statute, that is not the policy that Congress has embraced, as evidenced by the language it chose to use.

*Gotti,* 996 F.Supp. at 323, 325.

 Neither the Supreme Court nor this Court has directly addressed this issue, and the various district and circuit courts that have decided it have reached different conclusions. *Compare United States v. Riley,* 78 F.3d 367, 371 (8th Cir.1996) (substitute assets not subject to preconviction restraint under 18 U.S.C. § 1963); *In re Assets of Martin,* 1 F.3d 1351, 1359 (3d Cir.1993) (same); and *United States v. Floyd,* 992 F.2d 498, 502 (5th Cir.1993) (substitute assets not subject to pretrial restraint under analogous forfeiture provision in 21 U.S.C. § 853) *with In re Assets of Billman,* 915 F.2d 916, 921 (4th Cir.1990) (substitute assets subject to pretrial restraint under 18 U.S.C. § 1963), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991). Moreover, courts that have considered this issue question whether this Court's decision in *United States v. Regan,* 858 F.2d 115 (2d Cir.1988), authorizes the pretrial restraint of substitute assets, and the parties offer conflicting interpretations of *Regan.* We conclude that *Regan* must be restricted to its particular facts and that 18 U.S.C. § 1963(d)(1)(A) does not authorize the pretrial restraint of substitute assets.

In *Regan,* this Court faced the question of whether a pretrial restraining order entered under 18 U.S.C. § 1963(d)(1)(A) may be directed to unindicted third parties. In that case, five of the six RICO defendants were partners or executives of Princeton/Newport Partners, L.P. or the Princeton/Newport Group, or both, and were alleged to have conducted these firms in a manner that violated RICO. *Regan,* 858 F.2d at 117. Because the defendants' interests in the Princeton/Newport Group ("the Group") were forfeitable upon conviction as direct proceeds of racketeering activity, the Group was a third party in possession of potentially forfeitable property. The Group challenged a pretrial restraining order that prohibited it from engaging in transactions outside the ordinary course of business without prior authorization and subjected the Group's affairs

to review by a government-designated monitor. *See id.* at 118.

This Court agreed that the "proceeds" the defendants received from their illegal activity were forfeitable. *See Regan,* 858 F.2d at 119. This Court further held that Section 1963 authorized restraining orders directed at third parties. *See id.* at 120. However, a problem arose because the restraint intended to secure the availability of that property broadly applied to all of the Group's assets, rather than narrowly to the partnership interests of the individual defendants. *See id.* In an attempt to fashion a remedy that both secured forfeitable proceeds and protected the interests of unindicted third parties, this Court held that the district court should, as an alternative, restrain assets of the defendants equal in value to that of the forfeitable property. *See id.* at 121. It is important to note that the parties did not resist this proposed solution.

In vacating the pretrial restraining order in this case, the district court interpreted *Regan* as follows:

> The fact that *Regan* permitted the pretrial restraint of substitute assets in the limited circumstances of that case seems to us to fall considerably short of establishing the proposition that § 1963(d)(1)(A) invariably authorizes the restraint of substitute as well as directly forfeitable assets. *Regan* endorsed substitute asset restraints in the event a restraint on directly forfeitable assets burdened unindicted third parties, and not because of the unavailability of directly forfeitable assets, as contemplated by § 1963(m). Moreover, the specific restraint upheld by *Regan* did not apply to substitute assets but applied to directly forfeitable subsection (a) assets, where a burden was imposed on non-forfeitable assets held by third parties.

*Gotti,* 996 F.Supp. at 324.

On appeal, the government argues that *Regan* unambiguously recognizes the authority of a district court to issue a post-indictment, pretrial restraint of substitute assets and that Judge Parker's unduly narrow interpretation of *Regan* contravenes this Court's decision in that case. Gotti responds that the district court correctly held that *Regan* should be limited to its facts and that it represented an attempt to relieve an undue burden on a third party, rather than a blanket authorization of the pretrial restraint of substitute assets.

*Regan* generated considerable debate among the district courts and various circuit courts of appeals. *Compare United States v. Gigante,* 948 F.Supp. 279, 281 (S.D.N.Y.1996) (holding that "*Regan,* to the limited extent it addresses substitute assets, is concerned only with the equitable obligations of a court to minimize hardships to third parties impacted by a RICO restraining order") *with United States v. Berg,* 998 F.Supp. 395, 398 (S.D.N.Y.1998) (finding "substantial grounds" for concluding that Section 1963 does not permit the pretrial restraint of substitute assets but holding otherwise in view of "the logic in *Regan* "). *See also United States v. Bellomo,* 954 F.Supp. 630, 653–54 (S.D.N.Y. 1997) (holding that under *Regan,* Section 1963 authorizes pretrial restraint of substitute assets).

We take this opportunity to clarify this Court's holding in *Regan* by noting that the issue directly presented in that case involved the pretrial restraint of racketeering proceeds, not substitute assets. After balancing the equities, the Court fashioned a remedy that represented a compromise, accepted by the parties, which was designed to protect the interests of unindicted third parties. Because the permissibility of the pretrial restraint of substitute assets was not before the Court in *Regan,* any statements concerning that issue were beyond the circumstances of the case and do not control the result in this case. We thus are faced with a question of first impression in this Circuit, and those of our sister circuits that have considered the question are not in agreement.

As noted above, three circuit courts of appeals have addressed whether Section 1963(d)(1)(A) authorizes the post-indictment, pretrial forfeiture of substitute assets and have come to two competing conclusions. In *Martin,* the Third Circuit concluded that the propriety of a pretrial restraint on substitute assets depends on the relationship among the three provisions of Section 1963. Relying on

a plain language interpretation of the statute, the court held that because the restraints provision of Section 1963(d)(1) refers specifically to subsection (a) assets and does not mention subsection (m) substitute assets, Section 1963 does not authorize the pretrial restraint of substitute assets. *See In re Assets of Martin,* 1 F.3d at 1359. In *Riley,* the Eighth Circuit relied on its holding in an earlier case, *United States v. Field,* 62 F.3d 246 (8th Cir.1995), in which it employed a similar strict interpretation analysis to bar the restraint of substitute assets in the context of a nearly identical forfeiture provision under the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("CDAPCA"), 21 U.S.C. §§ 853(a), (e)(1), (p). *See Riley,* 78 F.3d at 371. The Ninth Circuit also has held that the CDAPCA does not authorize the pretrial restraint of substitute assets. *See United States v. Ripinsky,* 20 F.3d 359, 363 (9th Cir.1994) (holding that to interpret statute as authorizing pretrial restraint of substitute assets would be "clearly contradictory to the plain statutory language" and that while the statute commanded a liberal construction, it did not authorize "amend[ment] by interpretation") (quotation and citation omitted). *See also United States v. Chinn,* 687 F.Supp. 125, 126–27 (S.D.N.Y.1988) (pre*Regan* case finding no authority for pretrial restraint of substitute assets pursuant to Section 1963).

The Fourth Circuit is the only federal appellate court thus far to hold that Section 1963(d)(1) authorizes the pretrial restraint of substitute assets. *See In re Assets of Billman,* 915 F.2d at 921. In that case, the issue was whether Section 1963 allows the pretrial restraint of substitute assets that a fugitive RICO defendant had transferred to a third party. Answering this question in the affirmative, the court held:

> In *Russello v. United States,* 464 U.S. 16, 26–27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983), the Court, considering the proper construction of the forfeiture provisions of § 1963, emphasized that Congress intended that the statute "shall be liberally construed to effectuate its remedial purposes."

In the context of the case before us, the remedial purpose of the Act is to preserve the defendant's assets for ultimate forfeiture if he is convicted. Liberal construction of § 1963 requires reading its several subsections together, rather than in isolation, to achieve the congressional purpose of pretrial restraint.... [T]he pretrial restraining provisions of § 1963 do not permit a defendant to thwart the operation of forfeiture laws by absconding with RICO proceeds and then transferring his substitute assets to a third person....

*Id.* at 921.

■ It is true that in enacting Section 1963, Congress sought to "strip [racketeers and drug dealers] of their economic power" through which their criminal activity is sustained and grows. *See* Pub.L. No. 98–473, § 302, 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3374. However, where a statute is plain on its face, the court does not resort to legislative history or to the purpose of the statute to discern its meaning. *See In re Assets of Martin,* 1 F.3d at 1359 (citing *United States v. Koyomejian,* 946 F.2d 1450, 1453 (9th Cir. 1991); *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 260 (3d Cir.1992)).

We agree with the Fifth Circuit's interpretation of the nearly identical pretrial restraint provision of the CDAPCA, 21 U.S.C. § 853(e)(1), and conclude that 18 U.S.C. § 1963(d)(1)(A) "plainly states what property may be restrained before trial. Congress made specific reference to the property described in [subsection (a) ], and that description does not include substitute assets." *Floyd,* 992 F.2d at 502. Nothing in the legislative history of Section 1963 requires a different result. *See* Pub.L. No. 98–473, § 302, 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3380–81 (stating that amendments to statute included "a provision authorizing the court to order the defendant to forfeit substitute assets when his property originally subject to forfeiture has been made unavailable *at the time of conviction* ") (emphasis added).[2]

---

**2.** Although this report predated the enactment of the substitute assets provision, it remains valid legislative history for determining the provision's meaning. *See In re Assets of Martin,* 1 F.3d at 1360 n. 9.

In conclusion, while the pretrial restraint of substitute assets might arguably serve the stated legislative purpose of preserving assets for forfeiture upon conviction, the unambiguous language of 18 U.S.C. § 1963(d)(1)(A) provides no authority for the restraints. We therefore affirm the order of the district court.