**UNITED STATES of America**

v.

**Basem NAJJAR (a/k/a Bassem Najjar, a/k/a Basim Najjar, a/k/a Bassim Najjar, t/a Clinton Auto Sales) et al.**

**Criminal Action No. DKC 98–0505.**

United States District Court,
D. Maryland.

Feb. 22, 1999.

206

Stuart A. Berman, Assistant U.S. Atty., Greenbelt, MD, for U.S.

Robert C. Bonsib, Law Office, Greenbelt, MD, for Basem Najjar, ta Clinton Auto Sales aka Bassim Najjar aka Basim Najjar aka Bassem Najjar, defendant.

Stanley J. Reed, Law Office, Bethesda, MD, Harry J. Trainor, Jr., Knight, Manzi, Nussbaum & Laplaca, P.A., Upper Marlboro, MD, for Michael R. White, defendant.

Timothy Joseph Sullivan, Law Office, College Park, MD, for Tri–City Auto Outlet, Inc., defendant.

Robert C. Bonsib, Law Office, Greenbelt, MD, for Clinton Auto Sales, movant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

This matter comes before the court on Defendant Basim Najjar's motion to modify the prior restraining order. Defendant requests the court remove the restraints on all but $51,000 of the value of a piece of real property known as 4603 Brinkley Road. On February 5, 1999, the court held an adversarial hearing at which the parties presented evidence regarding the matters at issue. Following the hearing, Defendant Najjar sought to supplement the record with his affidavit and certain bank records. The court grants Defendant's request and has considered those supplemental materials and the Government's response thereto. The court now modifies its prior order as detailed within.

### Findings

On August 25, 1989, Defendant Najjar purchased property in Prince George's County now known as 4603 Brinkley Road. It is not clear whether Defendant purchased the property with his own money or with money given to him by his parents. It is clear, however, that the property was deeded to Defendant alone. The land remained deeded in Defendant's name until November 16, 1995, when Defendant sold it for $1.00 to his mother, Firyal Najjar, and his brother, Saleh Najjar.

The Government has proffered evidence showing that, between April 1995 and November 1996, Defendant contributed at least $51,094.26 to the construction of a house on the property. Based on Saleh Najjar's testimony at the hearing, the court also concludes that other members of the Najjar family contributed funds and physical labor to the construction of the house. Indeed, Saleh Najjar testified that he and his father, Abdul Najjar—who are both skilled carpenters—performed significant carpentry work on the house. The parties agree that the present assessed base value of the Brinkley Road property provides a reasonable estimate of the property's present market value. Specifically, the Prince George's County property records reflect a base value of the unimproved land of $51,200.00 and a base value of the improvements of $217,520.00 for a total of $268,720.00.

Despite these showings, neither side has presented enough evidence to determine precisely (a) what the total construction cost of the house was, (b) how much of the construction was performed by outside contractors and at what price, (c) who paid for those outside services, and (d) what services were provided by Najjar family members. Moreover, the court finds totally incredible Saleh Najjar's testimony that he personally contributed $40,000 to the construction of the house. Likewise, the court also does not believe that a payment in the amount of $24,729.49 from Abdul Najjar to Defendant on July 17, 1995 represents the reimbursement of out-of-pocket expenses incurred by Defendant on the construction of the house.

As part of the twenty-three-count indictment in this matter,[1] the Government established to the grand jury's satisfaction that there was probable cause to believe that 4603 Brinkley Road was forfeitable

pursuant to 18 U.S.C. § 1963(a)(1), (2) or (3), most likely as property traceable to the proceeds of Defendant's alleged racketeering activities. On the basis of that finding of probable cause, the Government sought and obtained the December 18, 1998 pre-trial restraining order. That order froze a variety of Defendant's assets, including 4603 Brinkley Road.

*Analysis*

■■ A criminal defendant whose property has been frozen pursuant to a post-indictment, pre-trial restraining order may obtain relief from that order upon a proper showing that the grand jury erred in determining that there was probable cause to believe that the restrained assets were forfeitable. *United States v. Jones,* 160 F.3d 641, 647 (10th Cir.1998). To obtain such relief, Defendant must make a two-part showing. First he must satisfy the court that he has no other assets with which to pay his living and legal expenses. *Id.* Second, he must demonstrate that the grand jury erred in concluding that 4603 Brinkley Road was forfeitable pursuant to § 1963(a). *Id.* Defendant satisfied the first showing with his affidavit stating that all of his assets are currently frozen.

■ As for the second showing, it seems clear that the grand jury was mistaken at least to the extent it concluded that the property is forfeitable pursuant to 18 U.S.C. § 1963(a) as opposed to § 1963(m). Under § 1963, forfeitable property falls into two general categories. First, there is what is commonly referred to as "traceable" property, which is forfeitable under § 1963(a) because it (1) was acquired or maintained in violation of the RICO statute, (2) was directly involved in a violation of the RICO statute, or (3) is derived from the proceeds of a RICO violation. Second, property may be forfeitable as "substitute"

---

1. The grand jury returned a superseding indictment in this matter on February 17, 1999. In that superseding indictment, the Government added Tri–City Auto Outlet, Inc. ("Tri-City") as a defendant. The Government did not, however, significantly alter its forfeiture allegations. The court has considered the superseding indictment, and the reasoning of this opinion applies with equal force to both the original indictment and the superseding indictment.

property pursuant to § 1963(m) because the defendant has made it difficult or impossible to identify and forfeit the directly traceable property.

The Brinkley Road property is only forfeitable as a substitute asset. The earliest allegations of wrong-doing in this action date from "about 1989[.]" *Indictment* at Count Twenty–Two. Indeed, the Government's own proffer indicates that Clinton Auto Sales did not open for business until November 21, 1989—approximately three months after Defendant bought the land on Brinkley Road. *Opposition Memorandum*, Att. 1. Moreover, the Government appears to concede for purposes of the present dispute that Defendant purchased the land with untainted money given to him by his parents. *Supplemental Opposition Memorandum* at 1–2.

Because the original purchase of the land at 4603 Brinkley Road was untainted by Defendant's alleged crimes, the entire improved property is at most forfeitable as a "substitute" asset pursuant to 18 U.S.C. § 1963(m)(5). Indeed, the Government recognizes this in its opposition memorandum where it states that:

> [W]hen the $51,000 in racketeering proceeds was added to the Brinkley Road property, it became "commingled with other property which cannot be divided without difficulty," § 1963(m)(5). As a result, the entire property, including the portion attributable to the original $35,-000 investment, became forfeitable as a substitute asset."

*Opposition* at 8 (citing *United States v. Voigt*, 89 F.3d 1050, 1086 (3d Cir.1996)). Therefore, the Government admits that the grand jury was mistaken when it concluded that 4603 Brinkley Road is forfeitable pursuant to § 1963(a) rather than § 1963(m).

That distinction matters. While the court has no discretion to unfreeze assets forfeitable pursuant to § 1963(a), the same is not true of assets forfeitable pursuant to § 1963(m). The Supreme Court has held that 21 U.S.C. § 853(d)[2]—and by implication 18 U.S.C. § 1963(d)—requires a district court to restrain or otherwise secure traceable assets. *United States v. Monsanto*, 491 U.S. 600, 612–13, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). While the Supreme Court made clear that traceable assets must be restrained, it left open the question of whether substitute assets must be similarly restrained. Likewise, the Fourth Circuit has yet to address the question. In the past, however, the Court of Appeals has taken an expansive view of § 1963(d). Relying on the Second Circuit's opinion in *United States v. Regan*,[3] the Fourth Circuit concluded that "§ 1963(d)(1)(A) should be construed to *authorize* pretrial restraint of those assets specified by subsections (a) and (m) that can be forfeited after conviction." *In re Billman*, 915 F.2d 916, 921 (4th Cir.1990) (emphasis added).[4] While the *Billman*

---

**2.** The language of 21 U.S.C. § 853 closely tracks that at 18 U.S.C. § 1963, and courts have often relied on one in interpreting the other. *United States v. McHan*, 101 F.3d 1027, 1042 (4th Cir.1996).

**3.** 858 F.2d 115 (2d Cir.1988). It should be noted that the Second Circuit recently made clear that *"Regan* must be restricted to its particular facts and that 18 U.S.C. § 1963(d)(1)(A) does not authorize the pretrial restraint of substitute assets." *United States v. Gotti*, 155 F.3d 144, 147 (2d Cir. 1998).

**4.** In contrast, five other circuits have relied on the plain language of the statute and concluded that § 1963(d) only allows the pre-trial restraint of assets forfeitable under subsection (a) and not assets forfeitable under subsection (m), *United States v. Gotti*, 155 F.3d 144, 149 (2d Cir.1998); *United States v. Riley*, 78 F.3d 367, 371 (8th Cir.1996); *United States v. Ripinsky*, 20 F.3d 359, 363 (9th Cir.1994); *In re Assets of Martin*, 1 F.3d 1351, 1359 (3d Cir. 1993); *United States v. Floyd*, 992 F.2d 498, 501 (5th Cir.1993). Section 1963(d) states in relevant part:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section[.]

court held that § 1963(d) *authorizes* pretrial restraints on substitute assets, it did not address whether the statute *requires* such restraints.

A careful analysis of *Billman* indicates in this instance that the court should not restrain Defendant Najjar's untainted interest in 4603 Brinkley Road. In *Billman,* the Government sought to restrain the defendant's substitute assets because the defendant there had absconded overseas with the traceable assets.[5] Indeed, the Court of Appeals rested its decision in *Billman* on its conclusion that "when ... the defendant has placed the assets specified in subsection (a) beyond the jurisdiction of the court, subsection (d)(1)(A) must be read in conjunction with subsection (m) to preserve the availability of substitute assets pending trial." *Id.* Therefore, where the Defendant affirmatively acts to evade the reach of the forfeiture laws, the Fourth Circuit concluded that § 1963(d) should be read broadly to counter those attempts.

That is not the case here. The Government does not claim that Defendant Najjar used 4603 Brinkley Road actively to avoid the forfeiture laws. Nor does it allege that Defendant Najjar has absconded with the proceeds of his alleged wrong-doing. To the contrary, the Government claims that 4603 Brinkley Road is forfeitable simply because it would be difficult to determine what portion of the property's value is attributable to tainted assets and what portion is attributable to untainted assets. Regardless, the entire property remains firmly within the court's jurisdiction. In the absence of any affirmative attempts by Defendant to evade forfeiture, it is inappropriate to restrain the untainted portion.

Moreover, Fourth Circuit authority casts doubt on the constitutionality of restraining the property in its entirety. The Court of Appeals has held that a criminal defendant enjoys a *qualified* Sixth Amend-

ment right to counsel of his or her choice. *In re Forfeiture Hearing as to Caplin & Drysdale,* 837 F.2d 637, 644 (4th Cir.1988) *aff'd sub nom. Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). In *Caplin,* the Fourth Circuit held that:

> Courts have recognized this right to counsel of choice as an independent right, expressed as the 'right of any accused, if he can provide counsel for himself *by his own resources* or through the aid of his family or friends, to be represented by the attorney of his choosing.'

*Id.* citing *United States v. Inman,* 483 F.2d 738 (4th Cir.1973) (emphasis added in *Caplin* ). In justifying the forfeiture of attorneys fees in *Caplin,* the Fourth Circuit further reasoned that:

> In the fee forfeiture context, the assets sought by the government are alleged to be an integral part of the very crime with which the defendant is charged. *See* 21 U.S.C. § 853(a) ... The government seeks to deny use of the property not as a mere penalty, but because the assets are themselves illicit.

*Id.* at 644–45, 109 S.Ct. 2646; *accord Billman,* 915 F.2d at 922 ("The government can forfeit a defendant's *contraband* assets without *infringing* his Sixth Amendment right to counsel." (emphasis added)).

■ The Government recognizes in this case that some of the value of 4603 Brinkley Road derives from legitimate, non-contraband sources. Yet it asks the court to restrain the entire property. In the absence of any indication that Defendant has attempted to thwart the forfeiture laws, the court cannot oblige. Defendant's Sixth Amendment right to counsel is simply more important than the Government's interest in the untainted portion of Defendant's substitute property. Accordingly, the court will modify its pre-trial re-

---

**5.** To be precise, the assets at issue in *Billman* were in the hands of a co-conspirator, and it was the co-conspirator who sought to lift the restraints on the money. As the *Billman* court made clear, however, the outcome would have been the same if the assets had been in the defendant's possession when they were restrained. *Billman,* 915 F.2d at 920.

straining order to the extent that the Government has not established that 4603 Brinkley Road is attributable to assets forfeitable pursuant to § 1963(a).

The approximate total present value of the property is $268,720.00. That includes a value of $51,200.00 for the unimproved land and a value of $217,520.00 for the improvements to the land. The Government concedes that Defendant purchased the property with untainted money in 1989 and therefore the unimproved land is not tainted by Defendant's alleged crimes. The court is also satisfied by the evidence presented in open court that other members of the Najjar family contributed funds and labor to the construction of the house. The value of their contributions, however, is unclear. For its part, the Government proffers records indicating that Defendant personally contributed at least $51,094.26 to the construction of the house. Since construction on the house was completed in 1997, its value probably has not appreciated significantly, and it is safe to assume that the house was worth well in excess of $51,094.26 at the time of its construction. Therefore, the combined showing of the Government that Defendant contributed $51,094.26 and of the Defendant that his family contributed an unspecified amount in cash and labor together leave much of the property's value unaccounted for.

While obviously not a precise apportionment, the court concludes that approximately half the cost of building the house at 4603 Brinkley Road is attributable to the physical labor and monetary contributions of members of the Najjar family other than Defendant. The court also concludes that those contributions by other Najjar family members are not tainted by Defendant's alleged criminal conduct. The court, however, attributes the other half of the value of the improvements to 4603 Brinkley Road to the proceeds of Defendant's alleged wrong doing. Therefore, taking the current assessed base value of the improvements—$217,520.00—the court

concludes that half of that value, or $108,-760.00, would be forfeitable pursuant to § 1963(a) were it not commingled with untainted assets.

*Conclusion*

For these reasons, the court modifies its December 18 Order to limit the restraints of that Order to $108,760.00 of the value of 4603 Brinkley Road. A separate order will be entered.

### ORDER

In accordance with the accompanying Memorandum Opinion, IT IS this 22nd day of February 1999, by the United States District Court for the District of Maryland, ORDERED that:

1. This court's prior Order dated December 18, 1998 BE, and hereby is, MODIFIED;

2. Only $108,760.00 of the value of certain real property located at 4603 Brinkley Road, Temple Hills, Maryland BE, and hereby is, SUBJECT to the restraints imposed by this court's Order dated December 18, 1998;

3. The record of the February 5, 1999, hearing on the Defendant's Motion to Modify Restraining Order is supplemented to the extent that the exhibits and affidavit attached to Defendant's motion to supplement SHALL become part of the record;

4. A bank deposit ticket dated July 17, 1995 SHALL be designated Defendant's Exhibit # 7;

5. A bank statement for July 1995 SHALL be designated Defendant's Exhibit # 8;

6. Defendant Najjar's affidavit SHALL be designated Defendant's Exhibit # 9; and

7. The clerk is directed to mail a copy of this Order and the accompanying Mem-